WRIGHT, APPELLANT, *v.*
UNIVERSITY HOSPITAL OF
CLEVELAND ET AL., APPELLEES.

(No. 54714—Decided
January 18, 1989.)

*Potash & Podor Co., L.P.A.,* and
*Lester S. Potash,* for appellant.

*Arter & Hadden, Rita A. Bartnik,
Irene Keyse-Walker* and *Edward S.
Jerse,* for appellees.

KRUPANSKY, P.J. Plaintiff, Shirley
F. Wright, filed a complaint in Cuya-
hoga County Common Pleas Court
against defendants, Doctors Honor
Wolfe, Patrick O'Grady, Thomas
Mullin and University Hospitals of
Cleveland. Plaintiff's complaint al-
leged defendants were negligent in the
performance of an abdominal hysterec-
tomy, causing injury to plaintiff's
urinary tract.

At the close of evidence, defen-
dants O'Grady and Mullin made mo-
tions for directed verdicts on statute of
limitations grounds. These motions
were granted on August 21, 1987. On
the same day, the jury returned a ver-
dict for defendants Wolfe and Univer-
sity Hospitals. On October 5, 1987,
plaintiff's motion for a new trial was
denied. Plaintiff filed a timely notice of
appeal assigning three errors.

The relevant facts follow:

Plaintiff entered the emergency
room of defendant University Hos-
pitals complaining of abdominal pain
and nausea. Plaintiff was examined by
Dr. Honor Wolfe, M.D., a third-year
resident at University Hospitals. After
various tests, plaintiff was diagnosed
as having a degenerating fibroid,
which is a growth attached to the wall
of the uterus. Dr. Wolfe consulted with
Dr. Thomas Mullin, M.D., a fourth-
year chief resident at University
Hospitals, and Dr. Patrick O'Grady,
M.D., a senior attending physician,
concerning plaintiff's condition. These
three doctors concurred and recom-
mended to plaintiff she undergo an ab-
dominal hysterectomy, a surgical pro-
cedure for the removal of a woman's
uterus through her abdomen.

Dr. Wolfe informed plaintiff of the
risks of the operation, including the
possibility of injury to the bladder
and/or the ureters, which are urine-
carrying vessels extending from the
kidneys to the bladder. The ureters are
in close proximity to the uterus and are
injured four to twenty times out of
every one thousand hysterectomies
performed. Plaintiff acknowledged she
understood the risks of the procedure
and signed a surgical consent form.

On May 18, 1984, the operation was conducted at defendant University Hospitals. Since plaintiff's hysterectomy was within the competence of a third-year resident, Dr. Wolfe performed the surgery on plaintiff's left side and Dr. Mullin operated on plaintiff's right side. After the operation began, defendant doctors observed plaintiff's uterus was the size it would be if plaintiff were three and one-half months pregnant. This enlargement was caused by the fibroid, which was approximately four inches in diameter. Plaintiff's enlarged uterus distorted her abdominal anatomy, making visualization of the operative area difficult and the hysterectomy more complicated than normal. Plaintiff's ureters were not visible to the physicians during the surgery. Plaintiff's hysterectomy was conducted and completed without any apparent problems.

On May 31, 1984, six days after her release from University Hospitals, defendant returned complaining of a watery vaginal discharge. Dr. Wolfe examined plaintiff and after several tests, informed her that the discharge was urine caused by some injury occurring probably at the time of the hysterectomy. Tests also revealed an obstruction of plaintiff's left ureter near its entry into the bladder. Plaintiff underwent corrective surgery.

Plaintiff sent all defendants a one-hundred-eighty day notice of medical malpractice claim letter on May 31, 1985, pursuant to R.C. 2305.11. Plaintiff filed her complaint on August 1, 1985.

Plaintiff's second and third assignments of error will be addressed first for a better understanding of assignment of error number one. Plaintiff's second and third assignments of error follow:

"II. The trial court erred in overruling plaintiff's motion for a new trial.

"III. The judgment of the trial court is against the manifest weight of the evidence."

Plaintiff's second and third assignments of error lack merit.

Plaintiff argues the trial court erred in not granting her motion for new trial pursuant to Civ. R. 59(A)(6)[1] on grounds the judgment is not sustained by the weight of the evidence. Plaintiff also contends the judgment of the trial court is against the manifest weight of the evidence. Since the same standard of review is used in both assignments of error, they will be discussed together.

" 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411, 461 N.E. 2d 1273, 1276.

"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.

"In order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done

---

[1] Civ. R. 59(A)(6) provides as follows:

"A new trial may be granted to all or any of the parties on all or part of the issues upon the following grounds: * * * (6) The judgment is not sustained by the weight of the evidence * * *."

under like or similar conditions or circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127, 75 O.O. 2d 184, 346 N.E. 2d 673, paragraph one of the syllabus.

Thus, the judgment of the trial court cannot be reversed if there is some competent, credible evidence going to the elements of a medical malpractice claim as set forth in *Bruni, supra.* At trial, the evidence established the following:

Plaintiff was admitted into University Hospitals for treatment of a degenerating fibroid, which is a growth on the wall of the uterus. A fibroid grows until it is larger than its blood supply, at which point it degenerates and dies. Drs. Wolfe and Mullin performed the hysterectomy on plaintiff with Dr. O'Grady in attendence. Dr. Wolfe operated on the left side of plaintiff and Dr. Mullin on the right. Plaintiff's hysterectomy was complicated due to an enlarged uterus which contained a fibroid approximately four inches in diameter. The size of the uterus and fibroid caused plaintiff's abdominal anatomy to be distorted and thus plaintiff's ureters could not be seen by the doctors.

Plaintiff's operation was conducted and completed without any apparent difficulties. However, six days after plaintiff departed University Hospitals, she returned complaining of a watery vaginal discharge. After several tests, it was determined the discharge was urine and plaintiff had suffered a blockage in her left ureter as a result of the hysterectomy. Dr. Wolfe informed plaintiff the injury to her urinary tract was "probably" from the operation procedure.

Since Dr. Wolfe operated on the left side of the plaintiff and injury was sustained on that side, the evidence from both parties centered on whether Dr. Wolfe met the standard of care in performing plaintiff's operation. Plaintiff's expert, Dr. John T. Hillabrand, M.D., testified that in the absence of any noncomplicating factors, if proper surgical techniques are utilized, no damage will occur to a patient's ureters. Dr. Hillabrand recognized that injury to a ureter is a risk in a hysterectomy, but concluded defendant Wolfe failed to meet the standard of care in plaintiff's surgery.

Defendant's expert, Dr. Justin P. Lavin, M.D., testified that the enlarged size of plaintiff's uterus was a complication which made plaintiff's hysterectomy more difficult to perform. Dr. Lavin also testified that even with the utilization of all possible precautions, damage to ureters occurs in one to one and one-half percent of all hysterectomies performed. Dr. Lavin concluded that Dr. Wolfe did meet the standard of care in plaintiff's surgery. Dr. Mullins also testified that Dr. Wolfe met the standard of care in plaintiff's operation. Finally, Dr. Wolfe testified as to the operative procedure she used on plaintiff and concluded the standard of care was met in plaintiff's surgery.

Considering the above evidence, competent, credible evidence going to all the elements of a medical malpractice claim, as set forth in *Bruni, supra,* was established in the case *sub judice.* The trial court's judgment for the defendant was neither against the manifest weight of the evidence nor did the trial court err in denying plaintiff's motion for a new trial.

Accordingly, plaintiff's second and third assignments of error are not well-taken and overruled.

Plaintiff's first assignment of error follows:

"The trial court erred in directing a verdict on behalf of defendants O'Grady and Mullin."

Plaintiff's first assignment of error has some merit and warrants review.

Plaintiff contends since Dr. Mullin moved to California in July, 1984, the statute of limitations under R.C. 2305.11 is tolled by R.C. 2305.15. Plaintiff's argument is persuasive.

Civ. R. 50(A)(4) provides as follows:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284-285, 21 O.O. 3d 177, 179, 423 N.E. 2d 467, 469, the court stated:

"In addition to Civ. R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, 'if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. * * *' "

Thus, for plaintiff's case to be submitted to a jury, there must be competent evidence concerning the timeliness of the filing of plaintiff's complaint under R.C. 2305.11.

R.C. 2305.11(A) provided in pertinent part as follows:

"An action for * * * malpractice, including an action for malpractice against a physician, * * * shall be brought within one year after the cause thereof accrued * * *.

"If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given."

In *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 512 N.E. 2d 237, paragraph one of the syllabus, the court held:

"Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the one-year statute of limitations commences to run (a) when the patient discovers or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (b) when the physician-patient relationship for that condition terminates, *whichever occurs later. (Oliver* v. *Kaiser Community Health Found.* [1983], 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438, explained and modified.)" (Emphasis' added.)

Accord *Hershberger* v. *Akron City Hosp.* (1987), 34 Ohio St. 3d 1, 516 N.E. 2d 204.

In the case *sub judice,* plaintiff's abdominal hysterectomy was performed by defendants on May 18, 1984. Plaintiff was discharged from defendant hospital on May 25, 1984. On May 30, 1984 plaintiff experienced a watery vaginal discharge. When plaintiff was last seen by Dr. Wolfe on *May 31, 1984,* Wolfe informed plaintiff the discharge was urine and that it was *probably caused by an injury which occurred at the time of surgery.*

Applying the *Frysinger, supra,* standard for accrual of medical malpractice actions under R.C. 2305.11 to the case *sub judice,* plaintiff's action began to accrue against

Drs. Wolfe,[2] Mullin and O'Grady on May 31, 1984, the date plaintiff discovered, or should have discovered, the resulting injury was caused by the operation of May 18, 1984. Pursuant to R.C. 2305.11(A), plaintiff sent defendants a one-hundred-eighty-day written notice of malpractice claim on May 31, 1985 and all parties stipulated this notice was received on June 3, 1985. Therefore, pursuant R.C. 2305.11(A), plaintiff had until November 30, 1985 in which to file her complaint. Plaintiff filed her complaint on August 1, 1985, well within the one-hundred-eighty-day extension set forth in R.C. 2305.11(A).

The trial court granted defendants O'Grady's and Mullin's motions for directed verdict on statute of limitations grounds provided in R.C. 2305.11, since plaintiff allegedly did not send her one-hundred-eighty-day notice in a timely manner. As stated in R.C. 2305.11(A), the plaintiff was required to send the one-hundred-eighty-day notice within one year of the accrual of her medical malpractice claim. Plaintiff's action began to accrue in regard to Drs. O'Grady and Mullin on May 31, 1984, when plaintiff's resulting injury was discovered or should have been discovered. Thus, plaintiff was required to have her one-hundred-eighty-day notice of claim received by defendants on or before May 31, 1985 if she wished to bring a medical malpractice action against Drs. O'Grady and Mullin.

Plaintiff sent this notice of malpractice claim on May 31, 1985. The parties stipulated defendants received plaintiff's notice of malpractice claim on June 3, 1984. Pursuant to R.C. 2305.11, written notice of a malpractice claim does not occur when the notice is mailed but arises when the

mail is received by the person to whom it is sent. *Johnson* v. *St. Luke's Hospital* (1981), 2 Ohio App. 3d 427, 2 OBR 521, 442 N.E. 2d 768.

In the case *sub judice*, plaintiff had one year from May 31, 1984 to either file her malpractice action or give defendants written notice of her malpractice claim. In regard to Dr. O'Grady, plaintiff failed to file her action or serve Dr. O'Grady with timely notice of her malpractice claim since Dr. O'Grady received written notice *after* May 31, 1985. Therefore, the trial court did not err when it granted Dr. O'Grady a directed verdict.

Assuming, *arguendo*, the trial court erred by granting Dr. O'Grady's motion for directed verdict, this error would be harmless error. Civ. R. 61 provides in pertinent part as follows:

"No error in * * * any ruling or order or in anything done or omitted by the court * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. * * *"

In the case *sub judice*, the court granted Dr. O'Grady's motion for directed verdict and the jury returned a verdict in Dr. Wolfe's favor, finding her not negligent. At trial, plaintiff adduced no evidence which would establish Dr. O'Grady's negligence.

Furthermore, Dr. O'Grady never actually performed surgery on the plaintiff, but was in the operating room as a supervisor of Dr. Wolfe. Since Dr. Wolfe was not held liable to plaintiff, it follows Dr. O'Grady, as Dr. Wolfe's supervisor, also cannot be held liable.

In addition, any claim of negligent supervision must fail since plaintiff did not produce expert testimony establishing the standard of care for such supervision, or a breach of that standard, as required by *Bruni* v. *Tatsumi,*

---

[2] Dr. Wolfe did not file a motion for directed verdict claiming the statute of limitations barred this action against her.

*supra,* at paragraphs one and two of the syllabus.

The trial court also granted defendant Mullin's motion for directed verdict on the statute of limitations. Although this was error, it was harmless error. Dr. Mullin had moved from Ohio to California in July 1984 subsequent to plaintiff's operation. Thus, plaintiff was entitled to have the statute of limitations on her action tolled against Dr. Mullin.

R.C. 2305.15 provides as follows:

"When a cause of action accrues against a person, if he is out of state, or has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, inclusive, and sections 1302.98 and 1304.29 of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, or absconds or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought."

The tolling provisions of R.C. 2305.15 apply to medical malpractice actions. *Burman* v. *Lach* (1982), 2 Ohio App. 3d 317, 2 OBR 350, 441 N.E. 2d 1150. Furthermore, the tolling provisions of R.C. 2305.15 apply to a defendant who is absent from the state even though he is amenable to process under R.C. 2307.382, the "long-arm" statute. *Barile* v. *Univ. of Virginia* (1986), 30 Ohio App. 3d 190, 195, 30 OBR 333, 337, 507 N.E. 2d 448, 452; and *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 55 O.O. 2d 120, 269 N.E. 2d 121.

Where a defendant leaves the state after a cause of action accrues against him, he "departs from the state" within the meaning of R.C. 2305.15 and the time of his absence is not computed as any part of a period within which the action must be brought. *Wetzel* v. *Weyant* (1975), 41 Ohio St. 2d 135, 70 O.O. 2d 227, 323 N.E. 2d 711. In order for plaintiff to avail herself of the tolling provisions of R.C. 2305.15 on the ground defendant departed from the state, plaintiff must prove the defendant departed from the state and how long the defendant was absent. *Walter* v. *Johnson* (1983), 10 Ohio App. 3d 201, 202, 10 OBR 274, 276, 461 N.E. 2d 27, 28. See, also, *Conway* v. *Smith* (1979), 66 Ohio App. 2d 65, 69, 20 O.O. 3d 134, 137, 419 N.E. 2d 1117, 1120.

In the case *sub judice,* it was established defendant Dr. Mullin left Ohio in July 1984; he did not return to the state until trial and allowed his Ohio medical license to expire, since he did not intend to return to the state. Thus, the statute of limitations on plaintiff's medical malpractice claim tolled against Dr. Mullin when he left the state of Ohio and the trial court erred in granting defendant Mullin's motion for directed verdict. However, the trial court's error was harmless error. See Civ. R. 61.

In the case *sub judice,* defendant Mullin's motion for directed verdict was granted at the close of all the evidence. The jury returned a verdict for Dr. Wolfe finding her not negligent. There was absolutely no evidence adduced at trial which would establish Dr. Mullin's negligence. Furthermore, Dr. Mullin operated on plaintiff's right side, where no injury occurred, and Dr. Wolfe operated on plaintiff's left side. Plaintiff's left ureter was injured during the performance of the hysterectomy. If the jury found defendant Wolfe not negligent and she operated on plaintiff's left side where the injury occurred, it follows that Dr. Mullin, who operated on the opposite side where no injury occurred, would also have been found not negligent by the jury. Althought the trial court erred in granting defendant Mullin's motion for

directed verdict, this error was harmless since substantial justice was done at trial and plaintiff's rights were not affected. See Civ. R. 61.

Accordingly, plaintiff's first assignment of error is not well-taken and overruled.

*Judgment affirmed.*

JOHN V. CORRIGAN and MATIA, JJ., concur.