OPINION
Plaintiffs-appellants, D'Lorah Holloway ("Dolly"), Lorinda Jill ("Jill") Holloway, Johanna Heggblom, Katherine Holloway Heggblom, Erin Holloway, and the estate of Merry Holloway (collectively, "appellants") appeal the grant of partial summary judgment by the Shelby County Court of Common Pleas to defendants-appellees, Holloway Sportswear, Inc. ("HSI") and William Randall Holloway ("Randy"). Appellants also appeal the court's decision denying their Civ.R. 60(B) motion for relief from judgment.
In 1951, J.H. "Bus" Holloway began HSI, serving as President and Chairman of the Board. Bus and his wife, Merry, had four children: Dolly, Jill, Randy, and Jack.[1] Bus gifted all four children shares in HSI so that they each became minority shareholders of the closely-held corporation. Bus ran HSI until he turned over the company's leadership to Randy in late 1978. Before tapping Randy as HSI's leader, Bus developed a stock-purchase plan that would ensure the company's continuing survival while providing retirement income to himself and Merry and providing his children with income.
On October 16, 1978, Bus held a meeting at his home to institute the plan. The immediate family was present, along with HSI's attorney, Carroll Lewis, and the corporation's treasurer, Roy Leasure. There, Bus instituted the plan, which involved two transactions. Jill, Dolly, and Merry each owned 22,500 shares of HSI, while each of Jill's two children owned 2,200 shares that were held in trust for them. In the first transaction, HSI's Employee Stock Option Plan ("ESOP") purchased all of the shares owned by Merry, Dolly, and Jill, as well as those owned by Jill's children.
The closely-held corporation's shares, which Bus had valued using an Internal Revenue Service formula, were purchased for $7.89 per share. The purchase price would be paid with a promissory note from ESOP guaranteed by HSI. ESOP would pay $10,000 at closing, with the balance paid in ninety-six equal monthly installments at six percent interest. The transaction would provide an annual income of $18,000 each to Dolly and Jill for twenty-four years. Dolly and Jill executed a sales agreement, while HSI executed a promissory note.
In the second transaction executed that day, Randy purchased Bus's own majority interest, which consisted of 128,700 shares of HSI stock, at the same price per share — $7.89 — that ESOP had paid Dolly and Jill. Randy purchased Bus's shares by executing a promissory note to his father in the amount of $1,015,443, with six percent interest. Jill, Dolly, and Merry all signed a waiver of their right to purchase Bus's stock. Randy was to pay the purchase price for Bus's shares in one hundred quarterly installments of $19,679.28. The note's payments would provide Bus and Merry with retirement income of $78,717.12 a year for twenty-five years. After Randy purchased the shares, he assumed leadership of HSI.
Bus died on December 30, 1986. Bus's will appointed Randy executor and trustee of a family trust he had established in May 1986. Under Bus's will, his real and tangible personal property would be given to Merry. The residuary estate, which was comprised mainly of Randy's note to Bus for the stock purchase, would pour over into the trust. The trust, which was nominally funded with $10 at the time it was created, had been established as a scholarship fund to provide $50,000 for each of Bus's four grandchildren. The trust agreement required that the scholarships be funded first. Any money remaining in the trust after funding the grandchildren's scholarships was to be distributed equally to Merry, Dolly, Jill, and Randy.
On October 16, 1986, approximately two and one-half months before Bus died, Randy owed $834,476.35 in principle on the stock-purchase note. After Bus's death, the estate owed over $220,000 in debts and expenses. Randy continued to make the scheduled payments on the note so that the estate could pay its debts and fund the trusts before being closed. On March 13, 1991, the estate distributed $243,500 to the trust. The Probate Division of the Circuit Court for Palm County, Florida, discharged the estate on March 15, 1991. The estate's lawyer, Jack Martyn, sent copies of the estate's accounting and tax return to Jill and Dolly.
In his capacity as trustee, Randy established four money market accounts of $50,000 each for Bus's grandchildren. He then divided the trust's remaining $43,500 among himself, Dolly, and Jill.[2] Randy continued to make payments to the trust on the note after the estate was closed. On April 15, 1994, Randy calculated the remaining balance he owed on the stock-purchase note to Bus, including principle and interest, at $585,298.50. Randy paid off the note, which the trust held, by tendering checks for one-third of the note's balance, $195,099.50 each, to Jill and to Dolly.
On April 12, 1996, appellants filed a three-count complaint against Randy and HSI. The complaint alleged that Randy had committed fraud by misrepresenting the fair market value of appellants' stock in HSI during the October 1978 transaction. The complaint also alleged that Randy, as trustee of the family trust, had failed to properly account for trust funds, thus breaching his fiduciary relationship with appellants.
Appellants later amended their complaint to include eight counts. Counts I through IV alleged that Randy committed fraud during the October 1978 transaction by misrepresenting and by failing to disclose material information about the value and future value of HSI's stock. Counts V through VIII alleged that Randy had breached his fiduciary duty as trustee of the family trust by failing to render a truthful and accurate accounting of money he paid to the trust, by failing to properly collect trust assets, and by misrepresenting the amount of money he had paid into the trust on the note.
Randy and HSI moved for summary judgment. After reviewing numerous affidavits and exhibits submitted by both parties, the trial court granted partial summary judgment for Randy and HSI. The court granted summary judgment on the entirety of Counts I through IV, which involved allegations of fraud in the October 1978 transaction, after finding the claims barred by the applicable statute of limitations. On Counts V through VII, in which appellants claimed fraud and breach of fiduciary duty in the administration of the family trust, the court granted summary judgment "as to all matters occurring before termination of the probate estate and the concurrent funding of the trust estate which occurred on March 13, 1991," and denied summary judgment "as to any matters alleged to have occurred during the administration of the trust estate." The trial court determined that its ruling on the summary judgment motion was a final appealable order in accordance with Civ.R. 54(B) and held the remaining issues in abeyance.
Appellants appealed the trial court's ruling granting partial summary judgment. While the appeal was pending, however, appellants filed a motion in the trial court requesting assignment of a new judge and a motion for relief from judgment pursuant to Civ.R. 60(B). Appellants' Civ.R. 60(B) motion attacked the impartiality of trial judge Sumner Walters, who was sitting by assignment, and it asserted that the trial court relied upon legally insufficient evidence in granting summary judgment and failed to give the proper weight to the evidence they introduced opposing summary judgment. We remanded the cause to the trial court for consideration of appellants' Civ.R. 60(B) motion. Judge Patrick Foley was then appointed to hear the Civ.R. 60(B) motion in the trial court.
After considering appellants' Civ.R. 60(B) motion, the trial court denied it. The trial court held that, while it had jurisdiction to consider appellants' claims that Judge Walters was biased, the judge's actions did not warrant vacating the ruling granting partial summary judgment. The court also held that appellants' claims that the trial court improperly relied upon evidence in ruling on summary judgment did not justify vacating its decision.
Appellants now appeal. In Assignment of Error No. 1, appellants challenge the trial court's ruling denying their motion for Civ.R. 60(B) relief from judgment based upon acts constituting the trial court's alleged bias. In Assignments of Error Nos. 2 and 3, appellants challenge the trial court's ruling granting partial summary judgment to Randy and HSI. In Assignment of Error No. 4, appellants claim the trial court abused its discretion in cutting off discovery, failing to disclose its relationship with defense counsel, and failing to properly follow the dictates of Civ.R. 56 in granting summary judgment. Since the substance of each of appellants' claims in Assignment of Error No. 4 will be addressed within the previous assignments of error, it will not be separately addressed.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS' 60(b)(5) [sic] MOTION FOR RELIEF FROM JUDGMENT BASED UPON THE TRIAL COURT'S DECISION THAT JUDGE WALTERS [sic] FAILURE TO DISCLOSE HIS PRESENT AND PRIOR RELATIONSHIP WITH ATTORNEY CHARLES STEELE DID NOT VIOLATE THE JUDICIAL CODE OF CONDUCT, RULE 3(E)(1).
Appellants first allege that Judge Walters' failure to disclose his relationship with one of appellees' attorneys and his bias against them, displayed in acts such as the suspension of oral discovery and the local rules of court, warrant relief from summary judgment under Civ.R. 60(B)(5). Appellees respond that this court has no jurisdiction to vacate the trial court's ruling granting partial summary judgment; instead, they argue, only the Ohio Supreme Court may make such a ruling because it implicates Judge Walters' bias.
Civ.R. 60(B) states in pertinent part:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect *** (5) any other reason justifying relief from the judgment.
A party bringing a motion under Civ.R. 60(B) may prevail only upon demonstrating the following three elements: (1) a meritorious defense or claim to present if relief is granted; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) timeliness of the motion. GTE Automatic Electric, Inc. v. ARC Industries
(1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
It is within the trial court's discretion to decide whether or not to grant a party's Civ.R. 60(B) motion to set aside a judgment. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. Accordingly, a trial court's decision granting or denying a Civ.R. 60(B) motion will not be disturbed absent an abuse of discretion. GTE, at 148. More than an error of judgment or law, an abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary and unconscionable. Edwardsv. Toledo City School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 106, 107.
This court has no jurisdiction to vacate Judge Walters' ruling on appellants' claim of judicial bias. In Beer v. Griffith (1978),54 Ohio St.2d 440, 441-42, the Ohio Supreme Court explicitly and unequivocally stated that, since only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals is without authority to pass upon disqualification or to void the judgment of the trial court on the basis of judicial bias. Though a judge would be without power to hear and determine a cause after disqualification, his judgment is not void, however erroneous it might be. Id.
Appellants ask this court to vacate Judge Walters' ruling granting partial summary judgment to appellees because the judge was allegedly biased. Addressing appellants' Civ.R. 60(B) motion, the trial court found that it had jurisdiction to rule on the merits of the claim:
 It is true that the power to disqualify a Judge rests only with the Chief Justice of the Ohio Supreme Court. The situation here is somewhat different. *** Disqualification of [Judge Walters] is not the issue. This court does have the authority pursuant to the remand to determine whether the undisclosed professional relationship with attorney Steele justifies relief from the judgment granted by Judge Walters.
However, Beer made no distinction between disqualification of a judge for bias and a motion asking the court to vacate a prior ruling for bias, as did the trial court here. Instead, Beer explicitly held that an appellate court may not void a trial court's judgment by finding judicial bias. Following Beer, we find that this court has no jurisdiction to vacate the trial court's order granting partial summary judgment on the basis that Judge Walters was biased or lacked impartiality.
We recognize, however, that Beer involved a direct appeal to the court of appeals while this case is an appeal from a Civ.R. 60(B)(5) motion. In Volodkevich v. Volodkevich (1988), 35 Ohio St.3d 152, 154, the Ohio Supreme Court held that a judge's participation in a case that gives rise to the appearance of impropriety and possible bias could constitute grounds for relief under Civ.R. 60(B)(5). Even assuming that this court has jurisdiction to vacate the trial court's grant of partial summary judgment where judicial bias is raised in a Civ.R. 60(B) motion, appellant has not established that Judge Walters displayed bias so that relief is warranted.
To prevail on a Civ.R. 60(B) motion alleging judicial bias, appellants were required to establish that Judge Walters' participation in the case gave rise to the appearance of impropriety and possible bias. SeeVolodkevich, 35 Ohio St.3d 152, syllabus at paragraph one. The term "bias or prejudice" implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind that will be governed by the law and the facts. In re Disqualification of Olivito
(1994), 74 Ohio St.3d 1261, 1263, quoting State ex rel. Pratt v.Weygandt (1956), 164 Ohio St. 463, 469.
Bias or prejudice on the part of a judge will not be presumed.Olivito, 74 Ohio St.3d at 1263. In fact, the law presumes the opposite — that a judge is unbiased and unprejudiced in the matters over which he presides. Id. The appearance of bias or prejudice must be compelling to overcome these presumptions. Id. Here, appellants claim that Judge Walters would have been subject to disqualification based on his relationship with Steele, one of appellees' attorneys, that his failure to disclose the relationship violated a Canon of the Code of Judicial Conduct, and that Judge Walters' acts of suspending discovery and the local rules of court raise a reasonable question regarding the judge's partiality.
Judge Walters' prior relationship with Steele, in which the two men attended law school together and Steele worked as a law clerk in Judge Walters' firm, neither subjected the judge to disqualification nor raised a reasonable question regarding the judge's bias or partiality. The prior professional activities of a judge are not grounds for disqualification where the record fails to demonstrate the existence of a relationship or interest that clearly and adversely impacts on a party's ability to obtain a fair trial. In re Disqualification of Cross (1991),74 Ohio St.3d 1228.
Appellees contend that Judge Walters' adverse rulings on discovery and evidentiary matters are attributable to his relationship with Steele. Nothing in the record supports appellants' assertions that Judge Walters made the complained-of rulings. Moreover, nothing shows that the judge's rulings, if made, are directly attributable to his relationship with Steele or adversely impacted appellants' ability to receive a fair trial. A trial judge's opinions of law, even if erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification. In re Disqualification of Murphy (1998),36 Ohio St.3d 605, 606.
Even assuming that this court has jurisdiction to make the determination, appellants have failed to show Judge Walters' participation in the case gave rise to the appearance of impropriety and possible bias. The trial court properly determined that appellants are not entitled to relief from the ruling granting partial summary judgment on grounds that Judge Walters demonstrated bias. Appellants' first assignment of error is overruled.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT, CONTRARY TO THE STANDARDS WHICH HAVE BEEN ESTABLISHED PURSUANT TO RULE 56(C), OHIO RULES OF CIVIL PROCEDURE.
Appellants next contend that the trial court erred in granting summary judgment in favor of appellees because it considered improper evidence including Jill's 1978 letter, Jill's deposition, Leasure's affidavit, and Randy's affidavit, while ignoring evidence they introduced. Appellees respond that all of appellants' claims are barred by the applicable statute of limitations for fraud actions, and even if not barred, no genuine issues of material fact exist. For the sake of clarity, all of appellants' allegations in regard to Counts I through IV of the complaint will be considered in this assignment of error, while appellants' allegations of error in regard to the trial court's ruling on Counts V through VII of the complaint will be considered in our discussion of Assignment of Error No. 3.
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995), 73 Ohio St.3d 679,686-87. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. In deciding whether there is a genuine issue of material fact, the evidence and the inferences drawn from the underlying facts must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co. (1998),82 Ohio St.3d 482, 485. We independently review the grant of the motion for summary judgment and do not give deference to the trial court's determination. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
In Counts I through IV of their amended complaint, appellants allege that Randy committed fraud and breached his fiduciary duty to them when he failed to disclose information about the value of their shares of HSI stock during the October 1978 meeting. Because appellants' claims of fraud in these counts are based upon acts that occurred approximately eighteen years before appellants filed their complaint, this court, as did the trial court, must initially determine whether there is a genuine issue of material fact regarding whether these counts are barred as a matter of law by the statute of limitations.
A party who moves for summary judgment on the basis that the applicable statute of limitations bars the claim has the initial burden of proving that the statute should apply. See Rainey v. Shaffer (1983),8 Ohio App.3d 262, 263. Once the movant's burden has been met, the burden shifts to the non-moving party to demonstrate that the statutory time was tolled. See Wright v. Univ. Hosp. of Cleveland (1989),55 Ohio App.3d 227; see, also, Walter v. Johnson (1983),10 Ohio App.3d 201. When a party moves for summary judgment asserting the statute of limitations, the other party may not merely rely on his pleadings, but is under an affirmative duty to present, by affidavit or otherwise, a genuine issue of material fact demonstrating that the statute of limitations is not applicable. Riley v. Montgomery (1984),11 Ohio St.3d 75, paragraph two of the syllabus. The responding party is required to set forth specific facts showing that there is a genuine issue for trial. Stemen v. Shibley (1982), 11 Ohio App.3d 263.
The applicable statute of limitations for claims of breach of fiduciary duty and fraud is set forth in R.C. 2305.09(D), the pertinent portions of which state:
 An action for any of the following causes shall be brought within four years after the cause thereof accrued:
***
(C) For relief on the ground of fraud.
 (D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12[,] 2305.14 and 1304.35 of the Revised Code. If the action is for *** fraud, until the fraud is discovered.
Fraud is explicitly enumerated in the statute as a cause of action subject to the "discovery rule." Shelman v. EPL Prolong, Inc. (2000),139 Ohio App.3d 231, 259, citing Investors REIT One v. Jacobs (1989),46 Ohio St.3d 176. The "discovery rule" generally provides that a cause of action accrues for the purpose of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury.Shelman, 139 Ohio App.3d at 259.
In their motion for summary judgment, appellees met their initial burden of showing appellants' action was precluded by the four-year statute of limitations by asserting that the complaint was filed on April 12, 1996, more than eighteen years after the October 1978 sale in which Randy allegedly misrepresented the value of HSI's stock. Appellees also introduced evidence consisting of a July 19, 1978 letter written by Jill to HSI's attorney.
Although appellants contend otherwise, Jill's 1978 letter was competent evidence on which the trial court could rely to grant summary judgment. A court may consider evidence other than that enumerated in Civ.R. 56(C) when there has been no objection to its admission. Johnson v. SearsRoebuck Co. (Aug. 14, 2000), Clermont App. No. CA2000-03-017, at 5, unreported. A court does not commit reversible error by considering documents not in accordance with Civ.R. 56(C) or (E) where there is no suggestion that the documents are not authentic or that the result would be different if the documents were properly authenticated. Id. Here, appellant neither objected to the admission of Jill's 1978 letter nor questioned its authenticity. The letter may be properly considered for summary judgment purposes.
Jill's 1978 letter states that she had consulted with a C.P.A. about the value of one of her children's shares and the possibility of increasing the child's holdings. This evidence shows that, even before the stock purchase, appellants had the wherewithal to contact a C.P.A to determine the value of HSI's stock. Appellants' affidavits, in which they allege that they had no reason to question the purchase until 1994, do not set forth specific facts showing that there is a genuine issue for trial.
There is no material factual dispute. Construing the evidence in appellants' favor, a reasonable trier of fact could come to but one conclusion and that conclusion is that the statute of limitations for appellants' action for fraud began to run on the date of the stock-purchase transaction in October 1978, approximately eighteen years before they filed the action against defendants. These claims were precluded by R.C. 2305.09(D). The trial court correctly granted summary judgment on Counts I through IV. Appellants' second assignment of error is overruled.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT, REGARDING COUNTS I THROUGH VII OF APPELLANTS' COMPLAINT, AS THE COURT MISCONSTRUED AND VIOLATED RULE 56(C), OHIO RULES OF CIVIL PROCEDURE.
In Counts V through VII of their amended complaint, appellants contended that Randy engaged in fraud and breached his duty as trustee of the family trust by failing to completely collect and account for all of the trust assets; by misrepresenting that he made required payments on the note; and by failing to maintain and provide the trust's records to the beneficiaries. The trial court granted partial summary judgment. The court found that appellees were entitled to judgment as a matter of law on their claims that Randy failed to account for the trust's assets and that he did not make required payments on the note. The court denied summary judgment on appellants' claims that Randy failed to provide an adequate accounting of the trust.
Appellants contend on appeal that the trial court erred when it granted partial summary judgment because the statute of limitations does not apply and the evidence showed that Randy failed to account for the entire amount of money he owed on the note used to purchase Bus's stock in HSI. Appellees respond that the counts are barred by the four-year statute of limitations for fraud and breach of fiduciary duty because the trust was fully funded in 1991, when Bus's estate was closed. They also argue that, even if the allegations are not barred by the statute of limitations, the evidence showed that Randy paid off the entire amount he owed on the note used to purchase Bus's stock, distributed the money appropriately, and fulfilled his duty as trustee.
We first determine whether the four-year statute of limitations in R.C. 2305.09(D) applies to preclude appellants' claims that Randy failed to account for the trust's assets and that he did not make required payments on the note. Appellees claim that the statute of limitations period began to run in 1991, when the family trust was fully funded with the remaining cash in the estate and the note and Bus's estate was closed. Because the cash was immediately distributed to the beneficiaries of the trust and the note was the trust's only asset, appellees argue that appellants should have known that the amount of the note, which was listed in the estate's accounting, was the amount of money they would receive.
The discovery rule does not apply to a claim for breach of fiduciary duty. R.C. 2305.09(D); Investors REIT, 46 Ohio St.3d at 176. Instead, a claim for the breach of a fiduciary duty accrues when an act or omission constituting the breach occurs, rather than when the breach is discovered. Id.; Helman v. EPL Prolong (2000), 139 Ohio App.3d 231,239. Here, appellees are correct that appellants knew the amount of money they were to receive when Bus's estate was closed in 1991 and they received its accounting. However, Randy was obligated to continue to make payments on the note to the trust even after Bus's estate was closed in 1991. The only point at which appellants could know whether Randy committed an act or omission constituting a breach of his duty or whether he committed fraud by misappropriating trust assets was at the point he purportedly paid off the note on April 15, 1994. Since appellants filed their claim in April 1996, within the four-year statute of limitations period, these claims are not barred by the statute of limitations.
Nonetheless, no genuine issues of material fact exist for trial on appellants' claims that Randy breached his duty or committed fraud by misappropriating trust assets. Appellants claim that Randy improperly placed seventeen note payments of $19,676.28 into Bus's estate while it was open when that money should have been paid into the trust, thus defrauding the trust's beneficiaries. However, Bus's will and the trust agreement make it clear that the note payments were part of the residuary estate that would eventually be placed into the trust. A "residuary estate" or "the residue" means everything that remains of an estate not otherwise disposed of. Hewes v. Mead (1947), 81 Ohio App. 489, 493. Here, the residuary estate, that is, any remaining note payments, only flowed into the trust once Bus's estate paid off its debts and was closed. There is no genuine issue of material fact but that Randy properly paid the money he owed on the note into the estate, rather than into the family trust.
Appellants also claim that Randy committed fraud by misappropriating approximately $751,000 in note payments that was due the trust. In 1978, Randy purchased Bus's shares by executing a promissory note in the amount of $1,015,443, with six percent interest. Randy continued to make the quarterly payments to Bus on the note while Bus was alive and to Bus's estate after he died. Thereafter, he continued to distribute one-third of the quarterly payments to his sisters. In April 1994, Randy paid off the balance of the note, the present value of which he calculated to be $585,298.50 including principle and interest. Randy executed checks to each of his sisters for $195,099.50, which represented each sister's one-third share in the note's proceeds, pursuant to the trust's terms.
Appellees pointed to evidence showing that appellants' allegations that Randy misappropriated over $751,000 from the trust's assets are based upon accounting errors. Appellants introduced no evidence indicating that Randy failed to make any of the required quarterly payments on the note. Neither did they introduce evidence that the amount of money Randy owed on the note in April 1994 was different from the amount he paid to satisfy the note's balance. Appellants have simply introduced no evidence showing a genuine issue of material fact exists that Randy misappropriated trust funds. We overrule appellants' assignment of error in regard to Counts I through VII of the complaint.
We affirm the trial court's ruling granting partial summary judgment and remand to the trial court for resolution of any remaining claims.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
Young, P.J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
Walsh, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
Powell, J., of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3) of the Ohio Constitution.
 JUDGMENT ENTRY
The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Shelby County Court of Common Pleas for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.
__________________________________ William W. Young, Presiding Judge
__________________________________ James E. Walsh, Judge.
__________________________________ Stephen W. Powell, Judge
[1] Jack Holloway was killed in a car accident in December 1977 and is not part of this litigation.
[2] Merry, who died in 1988 before Bus's residual estate was distributed to the trust, did not receive any money from the trust.