In re Disqualification of Olivito.

[Cite as *In re Disqualification of Olivito* (1994), 74 Ohio St.3d 1261.]

(Nos. 93–AP–202, 94–AP–078, 94–AP–095 and
94–AP–118—Decided August 26, 1994.)

MOYER, C.J.  Stephen M. Stern, Prosecuting Attorney of Jefferson County, has filed four affidavits of disqualification, Nos. 93–AP–202, 94–AP–078, 94–AP–095, and 94–AP–118, seeking the disqualification of Judge Dominick E. Olivito, Jefferson County Court of Common Pleas, from presiding in all pending and future cases in which the state or any other party is represented by the prosecuting attorney's office.  The extraordinary relief requested by Stern would preclude Judge Olivito from presiding in any criminal case and those civil cases in which the prosecutor is required by law to represent a party.

In addition to the initial affidavit, additional filings were made by both parties in case No. 93–AP–202, the last being received on August 22, 1994.  On August 25, 1994, Judge Olivito and Stern met with the Chief Justice to discuss the matters presented in the affidavits.

The numerous allegations contained in the affidavits can be summarized into five issues.  Judge Olivito is accused of:

1.  Preventing Stern from obtaining transcripts of proceedings.

2.  "Belligerent questioning of state's witnesses in criminal trials."

3.  Sentencing defendants to terms the prosecutor considers lenient or contrary to the evidence.

4.  Making disparaging comments publicly about the prosecutor and "humiliating" him and his assistants in open court.

5.  Permitting his son and brother to practice before him in violation of the Code of Judicial Conduct.

R.C. 2701.03 provides that a judge may be disqualified when the judge "is interested in a cause or matter pending before the court, is related to, or has a bias or prejudice either for or against, a party to a matter or cause pending before the court or his counsel, or is otherwise disqualified * * *."

The term "bias or prejudice" "implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 318, 132 N.E.2d 191, 195.

The statutory right to seek disqualification of a judge is an extraordinary remedy.  *In re Disqualification of Hunter* (1988), 36 Ohio St.3d 607, 522 N.E.2d

461. Further, a judge is presumed to follow the law in all respects, *In re Disqualification of Parks* (Aug. 26, 1993), No. 93–AP–060, unreported, and is presumed not to be biased:

" 'Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity.' " 48A Corpus Juris Secundum (1981) 731, Judges, Section 108, quoted in *State v. Baker* (1984), 25 Ohio Misc.2d 11, 12, 25 OBR 232, 234, 495 N.E.2d 976, 977–978.

The appearance of bias or prejudice must be compelling to overcome these presumptions and, where the relief requested involves not one case but the disqualification of a duly elected judge from all criminal cases, the standard for disqualification is necessarily high. It is in this context that the allegations raised by Stern must be considered.

In the voluminous materials submitted in this matter, I find little support for, and persuasive contradicting evidence against, the allegations numbered 1 and 2 above. As to the third issue, sentencing is a matter within the judge's discretion and I find nothing in the material submitted to me to support a conclusion that Judge Olivito is prejudiced against the prosecutor or the state in his sentencing decisions.

Regarding the next area of concern, there is uncontroverted evidence of rather egregious comments by Judge Olivito about Stern, language that is unworthy of a judge to utter about a prosecuting attorney or, for that matter, anyone else. However distasteful these and other comments may be, and regardless of whether they reflect Judge Olivito's personal feelings toward the prosecuting attorney, I do not find that those feelings have manifested themselves in his official duties to the extent that his disqualification from all criminal cases is warranted.

The statistics from the Common Pleas Court of Jefferson County for the past four years submitted by Judge Olivito and not controverted by Stern indicate a 92.9 percent conviction rate in criminal cases tried by Judge Olivito. That statistic supports a conclusion that the prosecutor has been able to effectively represent the state in criminal cases before Judge Olivito.

Neither the allegations regarding sentencing nor the prosecutor's understandable concern regarding statements of the judge on and off the bench causes me to conclude "that the citizens of Jefferson County are being deprived of their right to the fair and impartial administration of justice."

In the meeting on August 25, 1994, Judge Olivito expressed regret if any of his statements from the bench or elsewhere were or were construed to be disparag-

ing, humiliating, or otherwise inappropriate, and pledged to be more restrained and sensitive to this concern in the future.

The fifth issue raised by Stern is Judge Olivito's apparent practice, over many years, of occasionally permitting his brother and son to appear before him, and of appointing his son to represent indigent defendants in criminal cases. In none of his filings in this matter does Judge Olivito deny this allegation, as indeed he could not because of the documentary evidence attached to Stern's affidavit. The allegation does not relate directly to any of the cases that are the subject of the affidavits of disqualification.

Canon 3(C)(1)(d) of the Code of Judicial Conduct provides that a judge should not preside where a relative is acting as a lawyer in the case.

Since the issue does not apply in any of the cases before me, Canon 3(C)(1)(d) is not a reason for disqualification of Judge Olivito in these cases or all criminal cases. However, the Canon is clear: it seeks to eliminate even the appearance of partiality by prohibiting the proscribed conduct, and were it an issue in the cases in which these affidavits are filed, I would order Judge Olivito to remove himself from the cases. Judge Olivito has personally represented to me that he is not participating in, and will not participate in, any matter filed in the Common Pleas Court of Jefferson County in which his son, brother, or any other "relative," as defined by the Code of Judicial Conduct, is acting as a lawyer.

An additional matter was raised in Prosecutor Stern's supplemental affidavit filed August 22, 1994. Stern states that for many years he has received vile, profane, hate-filled letters from one Jon Olivito, a nephew of Judge Olivito. Stern alleges that these writings could only result from Judge Olivito's expressing these sentiments to his nephew or from his nephew's access to the media coverage of the disputes between Stern and Judge Olivito.

Judge Olivito vehemently denies any contact with or influence over his nephew. He notes that Jon Olivito is at least forty years old, lives out of state, and is estranged from his family. In fact, Judge Olivito himself, as well as other members of his family, has received hundreds of similar letters and threats from the nephew. It is obvious that Judge Olivito finds the conduct of his nephew to be most disturbing.

Even a cursory reading of this correspondence should convince anyone that its writer has, to put it charitably, a distorted, perverted view of the world. The suggestion that Judge Olivito has any control over the emotional acts of this disturbed adult is wholly unsupported by anything that has been submitted with the supplemental affidavit.

For the foregoing reasons, the affidavits of disqualification in case Nos. 93–AP–202, 94–AP–078, 94–AP–095 and 94–AP–118 are denied. This ruling renders

moot the Motion for Stay of All Criminal Proceedings filed by Stern in case No. 93–AP–202.

The timely filing of an affidavit of disqualification results, by operation of law, in an automatic stay of the proceedings, *Cuyahoga Cty. Bd. of Mental Retardation v. Assn. of Cuyahoga Cty. Teachers of the Trainable Retarded* (1975), 47 Ohio App.2d 28, 1 O.O.3d 168, 351 N.E.2d 777, which is lifted as of the date of this decision.

The relationship between Judge Olivito and Prosecuting Attorney Stern evident from the materials submitted in this matter is, quite simply, less than the public deserves from two veteran, respected, elected public officials. Although I will not, at this time, disqualify Judge Olivito, it is apparent that both parties must work to improve their professional relationship to reassure the citizens of Jefferson County of the fairness of their justice system.