JOURNAL ENTRY and OPINION
Appellant Terry Metzenbaum appeals from the trial court's dismissal of his affidavits of prosecution against appellees Dominic Vitantonio, Carlos Cervantes, Allison Hedervary, Brian Kota, and Rare Hospitality International, Incorporated, dba Longhorn Steakhouse (Longhorn). After conducting a probable cause hearing, the court determined the affidavits lacked merit, and dismissed the proceedings. Metzenbaum assigns the following as errors for our review:
 I. THE COURT BELOW ERRED BY HOLDING A PROBABLE CAUSE HEARING NOT AUTHORIZED BY CRIM. R. 4(A)1.
 II. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO BE ALLOWED TO QUESTION WITNESSES AT THE HEARING HELD MARCH 21, 2001.
 III. THE TRIAL COURT ERRED BY FAILING TO QUESTION WITNESSES IMPARTIALLY AS CONTEMPLATED BY EVID. R. 614(B) AND THE TRIAL COURT CONDUCTED ITSELF IN A MANNER SHOWING MANIFEST PREJUDICE AGAINST APPELLANT.
 IV. THE TRIAL COURT ERRED IN HOLDING A PRETRIAL CONFERENCE WITHOUT APPELLANT BEING PRESENT AND IMPROPERLY GRANTING MOTIONS WHICH HAD NOT BEEN PROPERLY SERVED UPON APPELLANT.
 V. THE TRIAL COURT ERRED BY FAILING TO RECUSE ITSELF SUA SPONTE FROM HEARING THIS CASE DUE TO A CONFLICT OF INTEREST OR APPEARANCE THEREOF.
Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
Meztzenbaum filed charges against the appellees after a series of incidents centering around Metzenbaum and Hedervary, a hostess at Longhorn Steakhouse. Metzenbaum was a frequent customer at Longhorn. He would often arrive before the start of Hedervary's shift, sit in her section, and wait for her to serve him. He brought gifts for Hedervary, twice unsuccessfully proposed marriage to her, and occasionally made lewd comments regarding her body.
On the evening of January 28, 2001, employees from Longhorn met at a restaurant to hold a going away party for a fellow employee. Hedervary arrived with her boyfriend, Kota, to discover Metzenbaum already present. Metzenbaum spent the evening close behind Hedervary. When the evening ended, Metzenbaum offered to take her home, an offer which she and Kota declined.
On January 30, 2001, the next time Hedervary arrived at work, she found Metzenbaum waiting in her section. Hedervary became visibly disturbed. When Cervantes, Hedervary's manager, noticed the effect Metzenbaum was having on her, he asked Metzenbaum to leave and indicated he was no longer welcome at Longhorn. He did as asked, but within minutes began calling Longhorn asking for Hedervary. After repeated calls from Metzenbaum, Cervantes reported Metzenbaum's conduct to the Mayfield Heights Police Department on January 31, 2001. The police filed a report, and asked Metzenbaum to avoid contacting Hedervary.
On February 5, 2001, Metzenbaum contacted Vitantonio, a Mayfield Heights assistant prosecutor who informed Metzenbaum that he was not charged with any crime. Metzenbaum then informed Vitantonio that he wanted to file charges against Hedervary for stalking.
On February 8, 2001, Metzenbaum inexplicably filed Affidavits for Prosecution against Hedervary for Falsification and Menacing by Stalking, against Kota for Complicity and Menacing by Stalking, against Cervantes for Complicity, Menacing by Stalking, and Falsification, against Vitantonio for Coercion and Violation of Civil Rights, and against Rare Hospitality, Inc. for Complicity and Menacing by Stalking. Metzenbaum claimed damages from Hedervary in the amount of $1,000,000, from Mayfield Heights in the amount of $25,000,000, and from Rare Hospitality in the amount of $1,000,000,000.
On March 21, 2001, as a result of the affidavits the Mayfield Heights municipal court held a hearing to determine whether probable cause existed to pursue the criminal charges alleged. At the hearing, the court took testimony from Hedervary, Kota, Cervantes, and Vitantonio among others. The trial court asked Metzenbaum to speak, but he declined asserting his Constitutional Fifth Amendment right against self-incrimination.
On March 23, 2001, the court filed its journal entry and opinion dismissing the affidavits for lack of probable cause. This appeal follows.
In his first assigned error, Metzenbaum asserts the trial court erred by holding a probable cause hearing not authorized by Crim.R. 4(A). We disagree.
Crim.R. 4(A) provides:
 (1) Upon Complaint. If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued * * *.
 * * *. Before ruling on a request for a warrant, the issuing authority may require the complainant to appear personally and may examine under oath the complainant and any witnesses. * * *.
In his argument to us, Metzenbaum attempts to create a distinction between affidavits alleging commission of a felony and affidavits alleging commission of a misdemeanor. No such distinction exists under Crim.R. 4(A). Rather, the court may conduct a probable cause hearing and issue an arrest warrant if it finds probable cause to do so, regardless of criminal classification.
We think Metzenbaum's complaint more appropriately relates to R.C.2935.09 and R.C. 2935.10.
R.C. 2935.09 provides:
 In all cases not provided by sections 2935.02 to 2935.08, inclusive, of the Revised Code, in order to cause the arrest or prosecution of a person charged with committing an offense in this state, a peace officer, or a private citizen having knowledge of the facts, shall file with the judge or clerk of a court of record, or with a magistrate, an affidavit charging the offense committed, or shall file such affidavit with the prosecuting attorney or attorney charged by law with the prosecution of offenses in court or before such magistrate, for the purpose of having a complaint filed by such prosecuting or other authorized attorney.
R.C. 2935.10 provides:
 (A) Upon the filing of an affidavit or complaint as provided by section 2935.09 of the Revised Code, if it charges the commission of a felony, such judge, clerk, or magistrate, unless he has reason to believe that it was not filed in good faith, or the claim is not meritorious, shall forthwith issue a warrant for the arrest of the person charged in the affidavit, and directed to a peace officer; otherwise he shall forthwith refer the matter to the prosecuting attorney or other attorney charged by law with prosecution for investigation prior to the issuance of warrant.
 (B) If the offense charged is a misdemeanor or violation of a municipal ordinance, such judge, clerk, or magistrate may:
 (1) Issue a warrant for the arrest of such person, directed to any officer named in section 2935.03 of the Revised Code but in cases of ordinance violation only to a police officer or marshal or deputy marshal of the municipal corporation;
 (2) Issue summons, to be served by a peace officer, bailiff, or court constable, commanding the person against whom the affidavit or complaint was filed to appear forthwith, or at a fixed time in the future, before such court or magistrate. Such summons shall be served in the same manner as in civil cases.
In these statutory sections, the legislature charges the judiciary with issuing an arrest warrant whenever a meritorious and bona fide affidavit charges commission of a felony. However, in the case of a charged misdemeanor, the courts have the option of ordering the arrest or summons of the alleged offender, if based upon probable cause.
Here, Metzenbaum alleged all parties committed misdemeanors, not felonies. Therefore, the court was not compelled by R.C. 2935.10 to summarily issue a warrant for the arrest of any charged party.
Addressing a similar situation, the Ohio Supreme Court stated:
 R.C. 2935.09 does not mandate prosecution of all offenses charged by affidavit. Although R.C. 2935.09
provides that a "private citizen having knowledge of the facts" shall file with a judge, clerk of court, or magistrate an affidavit charging an offense committed in order to cause the arrest or prosecution of a person charged, it must be read in pari materia with R.C. 2935.10, which prescribes the subsequent procedure to be followed. R.C. 2935.10 does not place any duty upon city prosecutors to prosecute misdemeanors charged by affidavit filed under R.C. 2935.09.[1]
Because Crim.R. 4(A) authorizes a court to hold a probable cause hearing regardless of offense classification, and because misdemeanors, as alleged by Metzenbaum, do not necessarily trigger issuance of any arrest warrants, the trial court did not err in holding a probable cause hearing. Accordingly, Metzenbaum's first assigned error is without merit.
In his second assigned error, Metzenbaum argues the trial court erred by not letting him question the individuals who testified at the probable cause hearing. We disagree.
Crim.R. 4(A) gives the court authority to hold a probable cause hearing in which it may examine witnesses under oath. Nothing in the rule gives the complainant the right to question witnesses. In fact, the rule exclusively permits the court to examine the complainant and witnesses.
Metzenbaum and others similarly situated must understand that the purpose of a probable cause hearing is to permit the prosecuting authority opportunity to discover whether probable cause to pursue a conviction exists. The hearing is not adversarial by nature, and does not exist to afford the complainant opportunity to press home his allegations as if in the civil realm. If the court determines that probable cause exists to pursue a conviction, then the court may issue an arrest warrant for the alleged offenders, and the prosecuting authority will press home the appropriate charges. Otherwise, the affidavit is properly dismissed.
We further note that the presiding judge here graciously allowed Metzenbaum to submit written questions to her which she would ask if appropriate. Metzenbaum did so and the judge asked the questions. Further, Metzenbaum had the opportunity to testify on his own behalf, but he chose to assert his Fifth Amendment right against self-incrimination. Consequently, he proffered no testimony as to why the charges alleged against the appellees were appropriate.
Because a complainant does not have the right to question witnesses at a Crim.R. 4(A) probable cause hearing, the lower court did not err in refusing to let Metzenbaum examine witnesses. Accordingly, Metzenbaum's second assigned error is without merit.
In his third assigned error, Metzenbaum argues the lower court erred by demonstrating prejudice against him in the manner in which it questioned witnesses, and by attempting to intimidate and coerce him into dismissing his affidavits "by (1) bringing uniformed police officers into Court, (2) by threatening criminal charges against Appellant, and (3) by the Trial Courts [sic] general beligerence [sic] against Appellant". We disagree.
First, Metzenbaum presents no support for his statement that the court acted with any sort of prejudice. Upon a review of the hearing transcript, we determine that the court conducted itself with commendable patience and objectivity.
Second, the trial court did not at any time attempt to intimidate or coerce Metzenbaum. The three specific points he raises here are completely baseless. Metzenbaum asked the judge why uniformed police were present in the courtroom. The judge responded that the officers were present, as usual, for security and because other cases were scheduled which involved police officers' testimony. It is unclear what Metzenbaum perceives as a threat of criminal charges. The only instances where the court addresses Metzenbaum with even a hint that he could be subject to criminal charges were when, the court warned him that rather than run the risk of incriminating himself, he may wish to assert his Fifth Amendment right against self-incrimination, and when the court asked Metzenbaum why he felt the need to file charges when it appeared from others' statements that charges may have been properly filed against him. Regardless, it is clear from the record that the lower court never threatened to file criminal charges against Metzenbaum. Finally, Metzenbaum points to no instance where the court acted belligerently towards him, and we see no such instance in the record.
Because Metzenbaum failed to provide any support for his allegations that the court acted with bias or attempted to intimidate or coerce him, and we see no such impropriety in the record, we determine the trial court did not err in how it conducted the probable cause hearing. Accordingly, Metzenbaum's third assigned error is without merit.
In his fourth assigned error, Metzenbaum argues the lower court erred by granting a motion that was made in his absence, and by accepting Bryan Carr as attorney of record for the City of Mayfield Heights. We disagree.
Although Metzenbaum does not specify the nature of the motion or how he was prejudiced, we glean from the record that he is referring to a motion made by Bryan Carr to have a court reporter present for the probable cause hearing. While we are permitted to strike this argument for failure to present a specific argument and provide reasons,[2] we may just as easily dispose of this argument by explaining that the motion and the court's decision had no impact whatsoever on the substantive issues before the lower court or the issues presently before us. Further, Metzenbaum acquiesced to the court reporter's presence at the start of the hearing. Thus, he has no present standing to object.
The second prong of this assigned error is based upon Carr's supposed familial relationship with Leonard Carr, Law Director of Mayfield Heights. This court has already disposed of this issue by denying his motion to strike answers based upon the same complaint he now raises. The trial court permitting Bryan Carr to serve as counsel of record has no bearing whatsoever on any substantive issue presently before this court.
In his fifth assigned error, Metzenbaum argues the lower court erred by failing to recuse itself from conducting the probable cause hearing due to an alleged conflict of interest. We disagree.
The law presumes that a judge is unbiased and unprejudiced in the matters over which he or she presides.[3] The appearance of bias or prejudice must be compelling to overcome this presumption of integrity.[4]
Here, Metzenbaum argues the judge should have recused herself because her supposed marriage to a Mayfield Heights police officer grants her "improper access to internal issues within the Law Department of the City of Mayfield Heights." This alleged and unsubstantiated appearance of bias or prejudice is not nearly compelling enough to warrant the judge's recusal from holding this probable cause hearing. Accordingly, Metzenbaum's fifth assigned error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, PRESIDING JUDGE, PATRICIA ANN BLACKMON, JUDGE AND FRANK D. CELEBREZZE, JR. JUDGE.
[1] State ex rel. Evens v. Columbus Department of Law (1998),83 Ohio St.3d 174, 175, 699 N.E.2d 60, 61. Internal citation omitted.
[2] See App.R. 12(A)(2); See, also App.R. 16(A)(7).
[3] See In Re Disqualification of Olivito (1994), 74 Ohio St.3d 1261,1263, 657 N.E.2d 1361.
[4] Id.