OPINION
Jerry E. Trott, defendant-appellant, appeals the July 11, 2001 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, wherein the court granted appellant and Sherri L. Trott, plaintiff-appellee, a divorce.
Appellant and appellee were married on September 24, 1983. Three children were born as issue of the marriage. Appellee filed a complaint for divorce on March 21, 2000. After several months, the parties entered into a shared parenting plan. During the course of the case, appellee filed five motions for contempt and one emergency motion against appellant, resulting in the granting of two of the contempt motions and the emergency motion.
The matter came on for a final hearing on June 11, 2001, and concluded on June 13, 2001. Appellant represented himself pro se, and appellee was represented by counsel. A judgment entry/decree of divorce was filed on July 11, 2001, in which the court divided the marital assets and debts. The court awarded appellee a portion of appellant's share of the marital assets due to appellant's misuse of marital assets during the pendency of the litigation. The court also ordered appellant to pay appellee $8,500 for attorney fees. Appellant now appeals this judgment, asserting the following assignments of error:
 I. The Trial Court erred when it awarded attorneys fees in the amount of $8500.00 to Appellee.
 II. The Trial Court erred when it made its award of assets and liabilities and assigned fees.
 III. The Trial Court [e]rred when it found Appellant in Contempt.
Appellant argues in his first assignment of error the trial court erred in awarding $8,500 in attorney fees to appellee. The trial court gave the following reasons for making the award of attorney fees: (1) the award was reasonable given the five contempt actions filed against appellant, two of which were sustained; (2) appellant's contempt filing against appellee had no legitimate basis; (3) there was a lengthy custody dispute that required a guardian ad litem; (4) appellee's attorney fees were reasonable, necessary, and appropriate, and the rate was on the low end of the average attorney fee rate; (5) appellant's actions and inaction during the course of litigation relative to compliance with the trial court's interim orders and disclosure of marital assets and debts and cooperation during the custody dispute, all caused appellee to incur additional attorney fees; and (6) appellant's attorney withdrew from representation prior to trial.
It is within the sound discretion of the trial court to award attorney fees in a divorce action. Rand v. Rand (1985), 18 Ohio St.3d 356, 359; Carman v. Carman (1996), 109 Ohio App.3d 698, 705. A decision to award attorney fees will be reversed only upon a showing of an abuse of that discretion. Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 371; Layne v. Layne (1992), 83 Ohio App.3d 559, 568. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. R.C. 3105.18(H) states:
 In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
Thus, for a court to award a party attorney fees pursuant to R.C.3105.18(H), it must determine that: (1) the attorney fees are reasonable; (2) the other party has the ability to pay the attorney fees; and (3) whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney fees.
In the present case, appellant contends the trial court failed to make any of the above findings. With regard to the first finding, the court specifically found that the fees were reasonable. The court stated on the record and in its decision that the fees for appellee's counsel were reasonable, necessary, and appropriate, and the hourly rate was on the lower end of the spectrum. Appellee presented the testimony of an attorney who stated that the fees were reasonable, necessary, and appropriate. He also testified the hourly rate was low, given the experience of appellee's attorney.
A review of the trial court's transcript and decision reveals the court did not specifically address the latter two required findings enunciated above. However, a trial court's failure to recite the exact language of R.C. 3105.18(H) is not reversible error if the record supports the trial court's determination. Curtis v. Curtis (2000), 140 Ohio App.3d 812,815; Mays v. Mays (Oct. 12, 2001), Miami App. No. 2000-CA-54, unreported. With regard to the second finding, the record supports the fact that appellant has the ability to pay the attorney fees. The trial court ordered appellant to pay $8,500 toward appellee's total amount of attorney fees, which was approximately $17,000. Appellant, who earns $28,000 annually, was entitled to $15,000 from an IOLTA (Interest on Lawyers' Trust Account) that resulted from the sale of the marital home. The trial court specifically ordered that the award of attorney fees be paid directly from appellant's half of the proceeds. It has long been the rule that an award of attorney fees is based upon, among other things, consideration of the parties' financial situation, including income and assets. Barone v. Barone (Sept. 1, 2000), Lucas App. No. L-98-1328, unreported; Cassaro v. Cassaro (1976), 50 Ohio App.2d 368 . Thus, the trial court could properly take into account appellant's $15,000 share from the sale of the marital home and his income in finding he had the ability to pay a portion of appellee's attorney fees.
The record also supports the award of attorney fees with regard to the third finding. Although appellee was awarded property and cash that would have enabled her to pay her own attorney fees and related expenses, she incurred additional attorney fees and certain expenses directly attributable to appellant's obstructive conduct. Appellee was forced to file five contempt motions and an emergency motion against appellant. At the final hearing, the trial court found appellant in contempt for not allowing appellee to speak with the children during appellant's visitation periods with the children and for not informing appellee that he and the children were vacationing in Florida. Thus, this evidence supports a finding that the costs involved in pursuing these myriad contempt motions may have prevented appellee from fully litigating her case. Further, an award of attorney fees may be predicated upon one party intentionally causing the other party to incur unnecessary, substantial fees or when one party is responsible for much of the litigation. Kelly-Doley v. Doley (Mar. 12, 1999), Lake App. No. 96-L-217, unreported. An award of attorney fees is warranted since appellant's noncompliance with court orders and lack of cooperation resulted in appellee having to incur substantial additional attorney fees. See Matyas v. Matyas (Jan. 17, 1985), Cuyahoga App. No. 48645, unreported; Pournaras v. Pournaras (June 26, 1986), Cuyahoga App. No. 50782, unreported. Thus, the trial court had an independent basis for awarding appellee partial attorney fees based on appellant's activities throughout the course of the divorce proceedings, including his violations of the restraining order.
Though it would be better practice for a trial court to specifically state its reasons for awarding attorney fees under R.C. 3105.18(H), using statutory language, for the purposes of appellate review, we find that under the circumstances of this case the record contains sufficient, supporting evidence for the court's award. Appellant's first assignment of error is overruled.
Appellant claims in his second assignment of error that the trial court's division of assets and award of attorney fees was an abuse of discretion. Although appellant asserts in his assignment of error that the trial court erred in dividing the assets and awarding attorney fees, he does not present an argument with respect to any specific division of property. Rather, appellant's entire argument is that the trial court made improper comments during the course of the trial that demonstrated hostility and prejudice.
Appellant first asserts the trial court made numerous sarcastic comments during the course of the hearing while he cross-examined appellee that demonstrated its hostility toward him. When he asked appellee about cash bonuses, the court interrupted and stated "Now we're not in this for spousal support, and you have already figured out your child support, right?" Appellant responded that he "may" be asking for spousal support. After noting the parties' similar incomes, the trial court stated: "Go ahead. Rack up the attorney fees. Go ahead. Answer the question." Appellant also points out that after appellee stated her cash bonus was between $250 and $400, the trial court sarcastically stated: "Yeah, that will jack up the spousal support request" and further stated "It's not unusual for bosses to give $200 in cash." Appellant also complains that after he asked appellee whether she thought it would have been better to spend their money on their children instead of spending it on litigation, the court stated, "Yeah, if you could have looked through a crystal ball the day that the case was filed, but now we're now a year down the road, sir." Further, while appellant was complaining about the cost of appellee's attorney, the judges, and the court reporter during his closing argument, the trial court interjected, "We could all work for free really."
If appellant believed the trial judge was biased or prejudiced at any stage of the proceedings, his remedy would have been to file an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court. R.C. 2701.03. See, also, Berdyck v. Shinde (1998),128 Ohio App.3d 68, 81; Jones v. Billingham (1995), 105 Ohio App.3d 8,11. The Chief Justice of the Ohio Supreme Court, or his designee, has exclusive jurisdiction to determine a claim that a common pleas court judge is biased or prejudiced. Section 5(C), Article IV, Ohio Constitution. R.C. 2701.03 provides the exclusive means by which a litigant may claim that a common pleas court judge is biased or prejudiced. State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, paragraph three of the syllabus. A court of appeals is without authority to void a trial court's judgment on the basis of alleged bias. Beer v. Griffith (1978), 54 Ohio St.2d 440, 441-442; State v. Dougherty (1994),99 Ohio App.3d 265, 269.
Notwithstanding, the law presumes that a judge is unbiased and unprejudiced in matters over which he or she presides. See In re Disqualification of Olivito (1994), 74 Ohio St.3d 1261, 1263. The appearance of bias or prejudice must be compelling to overcome this presumption of integrity. Id. In the present case, after reviewing the passages in the record, we do not find that the trial judge was biased. Reading these comments in context, it is apparent the trial court became understandably frustrated at times with appellant, who was pro se. On several occasions, appellant raised and pursued issues that were irrelevant, trivial, argumentative, or harassing. Further, although appellant never requested spousal support at any time prior to the final hearing, during the middle of cross-examination, he unexpectedly revealed that he "may" pursue spousal support. The trial court's response was clearly an attempt to persuade appellant to remain focused on relevant issues, given that spousal support was extremely unlikely under the circumstances, and, regardless, appellee's small cash bonus that appellant was dwelling on would have been inconsequential to a spousal support determination. Further, the record also contains numerous examples where the trial court attempted to assist appellant in understanding courtroom procedures and how to present certain pieces of evidence and testimony. Although extraneous comments from the trial court should be kept to a minimum, we cannot say that these comments in the present case demonstrated any bias that affected the outcome of the property division or award of attorney fees.
We likewise find without merit appellant's claim that the trial court improperly made comments showing it had predetermined the case. During appellant's cross-examination of appellee, as appellant and appellee quibbled about appellant's past settlement offers to divide all assets 50/50 and about their wasting money on litigation, the trial court stated, "I'll probably tell you after I'm done here with the testimony and what you have said, because I'm already adding up what it appears you may owe, and she may owe you back. It may not be 50/50 split." Appellant claims this demonstrates that the court was already making the property division before all of the evidence was presented.
While it is true that neither a jury nor trial court in a bench trial should form an opinion before all of the evidence is presented, the record clearly shows the trial court considered all of the evidence and testimony presented before it. The court gave appellant a full and fair opportunity to present his evidence. In fact, in the above quote, the court specifically indicated that it would not make a determination until after it was "done here with the testimony," and it used the word "may" in discussing the possibility of an unequal division. Further, soon after the court made the above statement and after appellant attempted to prematurely present his proposed decree of divorce, the trial court explained that it still had to hear more testimony and evidence and consider various items in determining the division of assets and debts. The court specifically stated that it was unsure at the time how it was going to divide the property. Therefore, we do not believe the above comments are indicative that the trial court predetermined the outcome of the case prior to the presentation of all of the evidence. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error the trial court erred in finding him in contempt for not allowing appellee to speak with the children during his visitation periods with the children and for not informing appellee that he and the children were vacationing in Florida. Appellant claims that because appellee also violated the restraining orders by taking property from the marital home, she had "unclean hands" and should not have been able to obtain the contempt remedy ordered by the court.
The standard of review of a trial court's finding of contempt is an abuse of discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10. Initially, we note that appellee presented testimony describing both of these instances for which appellant was found in contempt, and appellant presented no evidence in rebuttal. Further, at the time of the final hearing, there were no contempt motions pending against appellee and appellant did not attempt to present any evidence to support a contempt motion.
In addition, we find appellant's invocation of the "clean hands doctrine" inapplicable. The clean hands doctrine of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his or her prior-related conduct, the court will deny the remedy. Marinaro v. Major Indoor Soccer League (1991), 81 Ohio App.3d 42, 45. Thus, in order for the doctrine to bar a party's claims, the party must be found to be at fault in relation to the other party and in relation to the transaction upon which the claims are based. In the present case, appellee did not create the situation that resulted in the contempt sanction against appellant. Appellee's taking of marital property in violation of the restraining order was not in any way related to appellant not allowing appellee to speak with the children during his visitation periods with the children or to his not informing appellee that he and the children were vacationing in Florida.
Appellant's citation to Bean v. Bean (1983), 14 Ohio App.3d 358, is unpersuasive. In Bean, the wife was not permitted to obtain a contempt order against her husband for his failure to comply with the portion of the divorce decree requiring him to sell certain jewelry. The court found that she had "unclean hands," in that she had retained the jewelry, thus, preventing her husband from complying with the court order. In the current case, appellee's violation of the restraining order did not prevent appellant's compliance with the court orders. Thus, Bean is inapplicable, and the clean hands doctrine does not preclude appellee's claims in contempt against appellant. Appellant's third assignment of error is overruled.
Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.
Judgment affirmed.
TYACK, P.J., and BOWMAN, J., concur.