[Cite as *Youngstown v. Walker*, 2011-Ohio-1174.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CITY OF YOUNGSTOWN, | ) | |
| | ) | CASE NO. 09 MA 176 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| MARTINETTE WALKER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from
Youngstown Municipal Court,
Case No. 09TRD3612.

JUDGMENT:      Affirmed.

APPEARANCES:
For Plaintiff-Appellee:      Attorney Joseph Macejko
City Prosecutor
Attorney John H. Marsh, Jr.
Assistant City Prosecutor
26 S. Phelps Street, 4th Floor
Youngstown, OH 44503

For Defendant-Appellant:      Attorney Scott Essad
5815 Market Street, Suite 1
Youngstown, OH 44512

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: February 18, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, Martinette E. Walker, appeals two October 16, 2009 judgments (Case No. 09-TRD-1821 and Case No. 09-TRD-3612) of the Youngstown Municipal Court, each convicting her of one count of violating Youngstown's excessive vehicular sound ordinance, and sentencing her accordingly. On appeal, Walker contends her conviction in Case No. 09-TRD-1821 is against the sufficiency and the manifest weight of the evidence. Additionally, she argues the trial court erred by conducting the trial for Case No. 09-TRD-3612 immediately following the trial for Case No. 09-TRD-1821.

{¶2} Upon review, Walker's arguments are meritless. Any rational fact-finder could have found Walker guilty of violating the excessive vehicular sound ordinance in Case No. 09-TRD-1821, and therefore her conviction is supported by sufficient evidence. Further the resolution of Case No. 09-TRD-1821 hinged on credibility determinations best left to the trial court as fact-finder. The trial court did not lose its way so as to create a manifest miscarriage of justice and therefore Walker's conviction in Case No. 09-TRD-1821 is not against the manifest weight of the evidence. Finally, Walker failed to object to the timing of the two trials. It is clear that the trial court did not commit plain error by trying Case Nos. 09-TRD-1821 and 09-TRD-3612 successively. Accordingly, the judgments of the trial court are affirmed.

## Facts and Procedural History

{¶3} On April 27, 2009, Walker was issued a citation for violating Youngstown's excessive vehicular sound law, Youngstown Codified Ordinance (YCO) 539.07(b) (Case No. 09-TRD-1821). Walker was granted a continuance of her arraignment, but then failed to appear on June 1, 2009, as ordered. A capias was issued. Walker appeared in court on July 10, 2009, on Case No. 09-TRD-1821, and entered a not guilty plea, and the matter was set for trial on July 16, 2009. Walker subsequently waived her speedy trial rights and Case No. 09-TRD-1821 was reset for trial on August 10, 2009. Walker failed to appear for trial. When Walker finally appeared in court on August 14, 2009, Case No 09-TRD-1821 was re-set for trial on September 4, 2009, and upon Walker's motion was continued to September 25, 2009.

**{¶4}** In the meantime, on August 22, 2009, Walker was issued another citation for excessive vehicular sound, this time by Youngstown Police Officer Assad Chaibi (Case No. 09-TRD-3612). This case was also set for trial on September 25, 2009.

**{¶5}** Crim.R. 11 plea agreements were reached in both cases whereby Walker agreed to plead no contest to each charge. After entering those pleas, but before sentence was imposed, Walker denied culpability in open court. The court permitted Walker to withdraw her no contest pleas and after a short recess the matters proceeded to trial.

**{¶6}** First, the court conducted a bench trial on Case No. 09-TRD-1821. Officer Scott testified that she was working a security detail at the Plazaview Apartments on April 27, 2009. She stated she was standing outside the office for the apartments when she heard loud R&B music coming from McGuffey Road and Plazaview Court. She then saw the vehicle driving and continued to hear the loud music when it was over 100 feet away. Officer Scott saw the vehicle park and walked over to it. The music was still playing but the driver had exited. Officer Scott asked a group of people who had assembled outside the vehicle the identity of the driver and learned it was Walker. When Walker returned to her vehicle, she admitted it belonged to her. On cross, Scott stated that she did not measure the vehicle's distance from her when she first heard the loud music, but stated she knew it was over 50 feet. Following Officer Scott's testimony, defense counsel made a Crim.R. 29 motion for acquittal, which was denied.

**{¶7}** Walker then testified in her own defense. She admitted she was driving her truck to the Plazaview Apartments on the evening of April 27, 2009, to drop off her infant godson. She admitted she had R&B music playing, but said she only had the volume turned up half-way; not very loud since she had a baby in the vehicle. The windows were open "a little bit." She testified that while she was inside the apartments dropping off her godson, a woman reached in through the window of her vehicle and turned up the volume on the stereo. Walker said she did not give permission for anyone to turn up the volume. Following Walker's testimony, defense counsel made another Crim.R. 29 motion, which was denied.

{¶8} After considering the testimony in Case No. 09-TRD-1821, the trial court found Walker guilty.

{¶9} The court then proceeded to immediately conduct a bench trial for Case No. 09-TRD-3612. Officer Chaibi testified that on August 22, 2009, he heard loud music coming from Walker's truck from over 75 feet away. Walker testified she was not playing any music at that time. Walker presented as a witness a friend with whom she was allegedly on the phone at the time, to corroborate her testimony that no music was playing. After considering the evidence in Case No. 09-TRD- 3612, the trial court found Walker guilty.

{¶10} A sentencing hearing was held on October 16, 2009, for both cases. In Case No. 09-TRD-1821, the court sentenced Walker to 10 days in jail, to be served consecutively with the sentence in 09-TRD-3612, a $500 fine, $100 in reimbursement to Community Control Supervision, and two years of intensive probation supervision. In Case No. 09-TRD-3612, the court sentenced Walker to 10 days in jail, to be served consecutively with the sentence in 09-TRD-1812, a $500 fine, $100 in reimbursement to Community Control Supervision, and two years of intensive probation supervision.

{¶11} Walker filed a timely appeal from both judgments on October 16, 2009. The trial court granted Walker's motion to stay her sentences in both cases pending the outcome of this appeal.

### Sufficiency: Case No. 09-TRD-1821

{¶12} Walker asserts in her first of three assignments of error:

{¶13} "The trial court erred in denying the Appellant's Crim.R. 29 motion for acquittal in Case No. 09-TRD-1821."

{¶14} "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Therefore, "sufficiency is a test of adequacy." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. It is a question of law "whether the evidence is legally sufficient to sustain a verdict." Id. "In reviewing the record for

sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Smith* at 113 (citations omitted).

{¶15} In Case No. 09-TRD-1821, Walker was convicted of violating Youngstown's excessive vehicular sound ordinance as set forth in YCO 539.07(b)(1):

{¶16} "(b) Excessive Vehicular Sound Amplification Systems Prohibited.

{¶17} "(1) No person operating or occupying a motor vehicle upon any public road, street, highway or private property shall operate or permit the operation of any sound amplification system from within the vehicle so as to disturb the quiet, comfort or repose of other persons, or at a volume that is plainly audible from outside of the vehicle."

{¶18} "Sound amplification system" is defined as "any radio, tape player, compact disc, loudspeaker, speaker or other electronic device used for the amplification of musical instruments or other sounds." YCO 539.07(b)(2).

{¶19} "Plainly audible" means any sound produced by a sound amplification system from within the vehicle that can clearly be heard outside the vehicle at a distance of fifty feet or more. Measurement standards shall be by the auditory senses, based upon direct line of sight. Words or phrases need not be discernible and bass reverberations are included. * * *." YCO 539.07(b)(3)*.

{¶20} Walker makes much of the fact that the ordinance does not define the word "operating." When an ordinance does not define a term it is generally given its common meaning. As the Ohio Supreme Court has stated:

{¶21} "A legislative body need not define every word it uses in an enactment. Moreover, any term left undefined by statute is to be accorded its common, everyday meaning. * * * 'Words in common use will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them.'" (Internal citations omitted.) *State v. Dorso* (1983), 4 Ohio St.3d 60, 62, 4 OBR 150, 446 N.E.2d 449.

{¶22} Walker concedes that the common meaning of "operating" the vehicle would, at minimum, encompass driving the vehicle. This is consistent with the Ohio

Revised Code definition, as set forth in R.C. 4511.01(HHH), which states in pertinent part that "'[o]perate' means to cause or have caused movement of a vehicle[.]"

{¶23} Further, the city ordinance does not require that a person be operating the vehicle at the time; rather it states that "[n]o person operating *or occupying* a motor vehicle * * * shall operate or permit the operation of any sound amplification system from within the vehicle * * *." (Emphasis added.) YCO 539.07(b)(1). And YCO 539.07(b)(3) expressly states that: "[t]he motor vehicle may be parked, stopped, standing or moving."

{¶24} Regardless, there was evidence presented at trial that Walker was *driving* the vehicle when Officer Scott heard the excessive noise emanating therefrom. Officer Scott testified she heard, and then observed Walker's vehicle moving past her location with the music plainly audible from a distance of greater than 50 feet. By the time Officer Scott walked over to Walker's vehicle, Walker had exited and gone inside an apartment building. Officer Scott asked one of the people standing outside Walker's car the identity of the driver. Officer Scott was told that the driver was Walker. Walker, herself, admitted she had been driving the vehicle. Thus, evidence was presented as to each element at trial. Any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. As Walker's conviction in Case No. 09-TRD-1821 is supported by sufficient evidence, her first assignment of error is meritless.

### Manifest Weight: Case No. 09-TRD-1821

{¶25} Walker asserts in her second assignment of error:

{¶26} "The judgment in Case No. 09-TRD-1821 was against the manifest weight of the evidence."

{¶27} To determine whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶28} "Weight of the evidence concerns the inclination of the *greater amount of*

*credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.)  Id.  In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial.  Id.  However, a conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances.  Id.  This is so because the trier of fact is in a better position to determine credibility issues, since he personally viewed the demeanor, voice inflections and gestures of the witnesses.  *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.

**{¶29}**  Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the factfinder lost its way.' "  *State v. Pallai*, 7th Dist. No. 07 MA 198, 2008-Ohio-6635, at ¶31, quoting *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, at ¶81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶30}**  Here, as the court noted during trial, resolution of this case "turn[s] upon the credibility of witnesses."  Such determinations are best left to the fact-finder, where as here, neither witness's testimony was completely unbelievable.  The fact-finder could have believed Officer Scott's testimony that she observed Walker's vehicle moving past her location with the music plainly audible from a distance of greater than 50 feet.  Or it could have believed Walker's testimony that she was operating her vehicle with the music at half the maximum level with the windows ajar when she turned onto Plazaview Court. By resolving the credibility of witnesses in favor of the State, the trial court did not lose its way so as to create a manifest miscarriage of justice.  Accordingly, Walker's second assignment of error is meritless.

**Trying Case Nos. 09-TRD-1821 and 09-TRD-3612 Successively**

{¶31} In her third and final assignment of error Walker asserts:

{¶32} "Generally, judicial economy is preferred, but in this case, it was error for the trial court to try Martinette Walker's cases back-to-back."

{¶33} Walker argues that the trial court abused its discretion by conducting the trial for Case No. 09-TRD-3612 immediately following Case No. 09-TRD-1821. However, Walker never objected to this at the trial court.

{¶34} Failure to object to an error at the proper time to the trial court waives all but plain error. Reversal based upon the plain error doctrine requires an obvious error that affected a defendant's substantial rights under exceptional circumstances. Crim.R. 52(B); *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. It cannot be utilized unless the outcome clearly would have been different if not for the error. *State v. Waddell* (1996), 75 Ohio St.3d 163, 166, 661 N.E.2d 1043. "Even so, plain error is a discretionary doctrine which may, but *need not*, be employed if warranted." (Emphasis sic.) *State v. Donald*, 7th Dist. No. 08 MA 154, 2009-Ohio-4638, at ¶68, citing *State v. Hughbanks*, 99 Ohio St.3d 365, 792 N.E.2d 1081, 2003-Ohio-4121, at ¶39.

{¶35} The trial court did not commit any error, let alone plain error, by trying the two cases successively. The law that Walker cites regarding joinder is irrelevant as the trial court conducted separate trials for each case. And as the State points out, had Walker appeared in court as ordered in Case No. 09-TRD-1821, it is likely that case would have been resolved well before the citation for Case No. 09-TRD-3612 would have been issued.

{¶36} Further, Walker's claim that the "trial judge was fairly up-in-arms" before trial "to the point where she may not have been able to disassociate her finding of guilt in the first case from the one is the second case", is unsupported by the record. Although the trial court did make comments prior to trial which perhaps revealed its exasperation with those who violate the noise ordinance, there is no evidence that this biased the court in any way. A judge is presumed to be unbiased and unprejudiced in the matters over which the judge presides. *In re Disqualification of Olivito* (1994), 74 Ohio St.3d 1261,

1263, 657 N.E.2d 1361. The trial court did not commit plain error by trying the two cases successively. Accordingly, Walker's third assignment is meritless.

{¶37} All of Walker's assignments of error are meritless. Any rational fact-finder could have found Walker guilty of violating the excessive vehicular sound ordinance in Case No. 09-TRD-1821, and therefore her conviction is supported by sufficient evidence. Further the resolution of Case No. 09-TRD-1821 hinged on credibility determinations best left to the trial court as fact-finder. It is clear that the trial court did not lose its way so as to create a manifest miscarriage of justice and therefore Walker's conviction in Case No. 09-TRD-1821 is not against the manifest weight of the evidence. Finally, Walker failed to object to the timing of the two trials. The trial court did not commit plain error by trying Case Nos. 09-TRD-1821 and 09-TRD-3612 successively. Accordingly, the judgments of the trial court are affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.