OPINION
{¶ 1} Defendant-Appellant David W. Thrasher appeals from his conviction and sentence for Rape, Gross Sexual Imposition, and Abduction, following a jury trial. Thrasher contends that his conviction should be reversed because the prosecutor made several improper statements during closing arguments amounting to prosecutorial misconduct. After reviewing the record, we conclude that the prosecutor's statements were improper. However, Thrasher failed to object to these statements thereby waiving all but plain error, and we cannot conclude that the outcome of the trial would have been different but for the error.
 {¶ 2} Thrasher also contends that his conviction must be reversed because the prosecutor improperly asked the jury to convict him on an unindicted crime when he informed the jury that it could pick two of the three acts of sexual conduct in evidence to convict Thrasher of the two counts of Rape in the indictment. Because no objection was made to the indictment at any point in the proceedings, Thrasher has waived this issue and cannot raise it on appeal.
 {¶ 3} Thrasher contends that statements made by a State's witness were inadmissible hearsay. We conclude that the statements were admissible because they either were not hearsay or fell under an exception to the hearsay rule.
 {¶ 4} Thrasher contends that defense counsel was ineffective when he failed to object to the prosecutor's improper statements during closing arguments as well as the hearsay testimony by the State's witness. Thrasher also contends that defense counsel was ineffective when he failed to object to the prosecutor inviting the jury to convict him on an unindicted crime or a duplicitious indictment.
 {¶ 5} We conclude that defense counsel was not ineffective in his representation of Thrasher. Although we find that defense counsel's performance was deficient in failing to object to the prosecutor's improper statements during closing arguments, we conclude that the result of the proceeding would not have been different, but for counsel's errors. Given that we find the statements made by the State's witness to be admissible, we conclude that defense counsel was not deficient in not objecting to the testimony. We also conclude that defense counsel was not deficient in failing to object to the indictment as it may have been a reasonable tactical choice to avoid Thrasher being indicted on three counts of Rape as opposed to two.
 {¶ 6} Finally, Thrasher contends that his more-than-minimum sentence was based upon a finding of fact made by the trial judge, in violation of his right to a jury trial. This assignment of error is sustained upon the authority of State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856. Accordingly, the sentence is Reversed, and this cause is Remanded for re-sentencing in accordance with State v. Foster.
 I {¶ 7} On May 6, 2004, L.F. and her son went to see her boyfriend, C.J., at the apartment he shared with David Thrasher in Fairborn. L.F. left the apartment when C.J. went to work and brought her son to his babysitter in Huber Heights. L.F. had to go to Xenia to pay a fine for a traffic ticket that was due that day, but she first needed to get her check from her place of employment in Centerville. Her plan was to go to Centerville to get her check, go to Xenia to pay her fine, and then go back to Centerville to work her shift. L.F. received a text message from Thrasher asking her to bring him a Red Bull energy drink. L.F. explained that she was too busy. After L.F. informed Thrasher of her errands, Thrasher offered to loan her the money for her fine so she would not have to drive to Centerville to get her check. Thrasher told her that she could pay him back that night when she came over to see C.J. after work. L.F. agreed and brought Thrasher a Red Bull to his apartment.
 {¶ 8} When L.F. got to Thrasher's apartment, he informed her that he had a guest over who was using the bathroom. Assuming Thrasher was getting her the money he agreed to loan her, L.F. followed Thrasher back to his bedroom where he proceeded to dig around in his dresser drawer but then reached over and closed the bedroom door. When L.F. started walking toward the door, Thrasher blocked her and put his hands on her shoulder. Thrasher began kissing her and rubbing her breasts. L.F. repeatedly told him "no." Thrasher then picked her up and put her on his bed where he started to unbutton her jeans. When Thrasher's guest came out of the bathroom, Thrasher got up briefly to make sure his guest made it out of his apartment. L.F. buttoned her pants and jumped out of bed, but Thrasher returned and picked her up and put her back on the bed. L.F. again said "no," but Thrasher proceeded to remove her jeans and digitally penetrate her. L.F. attempted to get away but Thrasher held her legs down. Thrasher then removed her underwear, performed oral sex on her, and had sexual intercourse with her. When Thrasher was done, L.F. got dressed and attempted to leave but Thrasher stopped her to give her the money. Thrasher then said that he did not have it, and L.F. left.
 {¶ 9} L.F. went to her place of employment and spoke to her roommate and supervisor, L.W. While speaking to L.W., L.F. vomited twice. L.W. took L.F. to the hospital, where a nurse completed a rape kit on her.
 {¶ 10} Thrasher was subsequently arrested and indicted on two counts of Rape, one count of Gross Sexual Imposition, and one count of Abduction. This case proceeded to a jury trial, and Thrasher was found guilty of all counts. The trial court sentenced Thrasher to a total of nine years of imprisonment. From his conviction and sentence, Thrasher appeals.
 II {¶ 11} Thrasher's First Assignment of Error is as follows:
 {¶ 12} "THE APPELLANT'S CONVICTION MUST BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT."
 {¶ 13} Thrasher contends that his conviction should be reversed because the prosecutor made several improper statements during closing arguments amounting to prosecutorial misconduct.
 {¶ 14} Prosecutorial misconduct exists where statements made by the prosecutor are improper and the improper statements prejudicially affect substantial rights of the defendant. Statev. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. "`The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'" Id. at 166, citations omitted. To determine whether the prosecutor's statements were prejudicial, we must review closing arguments in their entirety.State v. Moritz (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92,407 N.E.2d 1268.
 {¶ 15} Prosecutors and defense counsel have a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. Lott, 51 Ohio St.3d at 165. However, prosecutors must refrain from making misleading insinuations and assertions as well as expressing personal beliefs or opinions regarding the defendant's guilt. Id. at 166. Prosecutors must also refrain from alluding to matters unsupported by admissible evidence. Id. The Ohio Supreme Court has previously stated that "`[w]here opinions [on guilt] are expressed on facts outside the evidence, or are predicated on inferences based on facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal.' However, where the reference to matters outside the record is short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous objection, there is no prejudicial error." Id., internal citations omitted.
 {¶ 16} In closing argument, the prosecutor made the following statement:
 {¶ 17} "Now, I guess one could say in the most cynical way, well, maybe the victim concocted the vomiting or whatever. Well, people who deal with sexual abuse victims understand that's a common response to someone that has been molested or assaulted. I think it's hard to fake."
 {¶ 18} The prosecutor also stated that "[w]hen [C.J.] sat in our office, as he testified from the witness chair and I brought out, when he sat in our office with Detective Kordish there, he started bawling and crying and telling us what this Defendant admitted to doing to that girl." The prosecutor also stated that C.J.'s testimony was "highly, highly credible."
 {¶ 19} The prosecutor made the following statements regarding L.F.:
 {¶ 20} "And, of course, you heard from the victim herself, [L.F]. Now, you know, we have interviewed her a few times in the office, my Victim-Witness Advocate, Detective Kordish. When she was on the witness stand, she was pretty much the way she was in my office when we interviewed her.
 {¶ 21} "I want to apologize. I want to say this. When she started crying and stuff, if you noticed, I kind of moved through it. I didn't stop. I just wanted to plow through it. And one of the reasons for that is because of the fact that after interviewing [L.F.], [L.], enough in my office, I knew what to expect. You know, this wasn't some show in front of you guys. This is hard to do, to talk about your personal life in front of 12 strange people. But we've had her in the office a few times and she's fine. We talk about stuff, and how her kids are doing. * * *
 {¶ 22} "But once we get to this assault, and the same thing happens every time. She just breaks down and starts bawling. It's hard to get through it, especially once you get to the nitty-gritty about what this Defendant did to her and the permanent emotional scar he put on her. It happens every time."
 {¶ 23} The prosecutor further commented that "[w]hen you have a case such as this where you have a rape case and yes, it's true, we've gotten to know the victim over a period of months and we've dealt with her as she's gone through counseling and stuff and we've gotten to know her, and he's right, that my presentation, partly animated as it is, is due in large part to the belief that we have in the victim and what she's been through, what we know she's been through."
 {¶ 24} Thrasher contends that the prosecutor's improper statements were based on evidence outside of the record and expressed the prosecutor's personal belief as to the credibility of witnesses. Because defense counsel did not object to the alleged improper statements made by the prosecutor, any claim of error regarding the statements is considered waived unless, but for the error, the outcome of the trial clearly would have been different. State v. Ballew, 76 Ohio St.3d 244, 251,1996-Ohio-81, 667 N.E.2d 369. Reversing a conviction for plain error should be done only in exceptional circumstances and to prevent a manifest miscarriage of justice. State v. Jenks
(1991), 61 Ohio St.3d 259, 282, 574 N.E.2d 492.
 {¶ 25} A review of the record reveals that no evidence was submitted showing that vomiting is a common response by sexual abuse victims or that C.J. cried when being interviewed about the incident between Thrasher and L.F. There is also no evidence showing that L.F. broke down and cried when being interviewed or that L.F. went through counseling. Although we find the prosecutor's statements to be improper, we cannot conclude that the outcome of the trial would have been different but for the error. The trial court in this case properly instructed the jury that closing arguments are not to be considered evidence, and we must presume that the jury followed the trial court's instructions.
 {¶ 26} Thrasher also contends that the prosecutor improperly stated during closing argument that the nurse, who examined L.F., testified that L.F. had bruising on her back and rib area. Because the nurse did testify that she observed a reddened area on L.F.'s back, we find that the prosecutor's statement was not reasonably calculated to mislead.
 {¶ 27} Thrasher further contends that the prosecutor improperly stated during closing argument that he resented "the fact that the State would put up a witness or somehow coerce a witness to lie." The prosecutor stated, "I resent that. I resent that as an attorney, as Chief Trial Counsel of the Greene County Prosecutor's Office. That's embarrassing, and that didn't happen."
 {¶ 28} The prosecutor made these statements in rebuttal to defense counsel's closing argument and most likely in response to assertions made by defense counsel during his closing argument. In closing argument, defense counsel stated that C.J. was "playdough" in the prosecutor's hands. He stated that he had submitted him as a witness and that what he told him in his office was very different than what he said to the prosecutor — "he was dough in his hands." We conclude that the prosecutor's statements were justified as a reply to defense counsel's arguments.
 {¶ 29} Thrasher's First Assignment of Error is overruled.
 III {¶ 30} Thrasher's Second Assignment of Error is as follows:
 {¶ 31} "THE APPELLANT'S CONVICTION MUST BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT IN INVITING THE JURY TO CONVICT ON AN UNINDICTED CRIME."
 {¶ 32} Thrasher contends that his conviction must be reversed because the prosecutor improperly asked the jury to convict him on an unindicted crime when he informed the jury that it could pick two of the three acts of sexual conduct in evidence to convict Thrasher of the two counts of Rape in the indictment. Thrasher further contends that the indictment was duplicitious because it joined two distinct offenses in a single count.
 {¶ 33} We first note that Thrasher's initial remedy would have been to seek a bill of particulars pursuant to Crim.R. 7(E), which would have set forth the nature of the offense and the conduct of the defendant alleged to constitute the offense. Thrasher failed to make such a request. Thrasher also failed to raise any objections to the indictment.
 {¶ 34} The Ohio Supreme Court has held that a defendant's failure to object to an indictment before trial waives any defect in the indictment. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, 781 N.E.2d 88, at ¶ 61. Pursuant to Crim.R. 12(C)(2), "defenses and objections based on defects in the indictment * * * (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)" must be raised before trial. Failure to raise defenses or objections before trial constitutes waiver of the defenses or objections. Crim.R. 12(H).
 {¶ 35} In this case, no objection was made to the indictment at any point in the proceedings. Therefore, Thrasher has waived this issue and cannot raise it on appeal.
 {¶ 36} Thrasher's Second Assignment of Error is overruled.
 IV {¶ 37} Thrasher's Third Assignment of Error is as follows:
 {¶ 38} "THE APPELLANT'S CONVICTION MUST BE REVERSED DUE TO ILLEGAL BOLSTERING OF A WITNESS' TESTIMONY BY HEARSAY."
 {¶ 39} Thrasher contends that several statements made by C.J. should have been excluded as inadmissible hearsay. Thrasher contends that C.J.'s testimony regarding a conversation with Thrasher was hearsay and that his testimony regarding a conversation with Thrasher recounting what L.F. said to Thrasher was hearsay on hearsay.
 {¶ 40} Evid.R. 802 provides that hearsay is inadmissible except as otherwise provided by the Rules of Evidence. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A statement is not hearsay if it "is offered against a party and is his own statement, in either his individual or a representative capacity * * *." Evid.R. 801(D)(2)(a). A statement of the declarant's then existing state of mind is also an exception to the hearsay rule. Evid.R. 803(3).
 {¶ 41} Thrasher directs us to several statements made by C.J. on direct examination that he contends are inadmissible hearsay. C.J. testified "he [Thrasher] told me that he — he just said something about he was kissing on her, and she was like, `No, no, what about [C.J.]?' And he responded, "Don't worry about [C.J.]. [C.J.] is a grown man.'"
 {¶ 42} Although this statement is hearsay, it falls under the state of mind exception to the hearsay rule. This statement shows L.F.'s state of mind regarding her feelings at that moment as well as Thrasher's state of mind regarding whether he knew that the encounter with L.F. was not consensual. We conclude that this statement is admissible under Evid.R. 803(3).
 {¶ 43} Thrasher also points out another statement made by C.J. on direct examination that he contends is inadmissible hearsay. C.J. testified as follows:
 {¶ 44} "Q. That eventually she just gave in because of his size and stuff?
 {¶ 45} "A. Yes. That's what she said, yes."
 {¶ 46} However, this statement must be put in context with his prior testimony which was as follows:
 {¶ 47} "Q. You're good friends with the Defendant, aren't you?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. Do you remember telling us, after talking to the Defendant that it was clear that [L.F.] didn't want to have sex with him that day?
 {¶ 50} "A. Yes.
 {¶ 51} "Q. Okay. And that the Defendant admitted that [L.F.] said no several times, isn't that right?
 {¶ 52} "A. Yes.
 {¶ 53} "Q. That eventually she just gave in because of his size and stuff?
 {¶ 54} "A. Yes. That's what she said, yes."
 {¶ 55} It is clear that the prosecutor was questioning C.J. not as to what L.F. had told him, but rather as to what Thrasher admitted to C.J. We conclude that this statement is also admissible as a statement of a party opponent, because it was Thrasher's statement and was offered against him by the State.
 {¶ 56} Thrasher also takes issue with the prosecutor's question to C.J., "Do you remember telling us, after talking to the Defendant that it was clear that [L.F.] didn't want to have sex with him that day?" Thrasher contends that this question is misleading because "[C.J.] is never permitted to recount specific statements that the Appellant supposedly made to him that caused this paraphrase by the prosecutor." However, C.J. had previously testified that "he [Thrasher] told me that he — he just said something about he was kissing on her, and she was like, `No, no, what about [C.J.]?' And he responded, "Don't worry about [C.J.]. [C.J.] is a grown man.'" These were specific statements by Thrasher that could lead to the prosecutor's question "Do you remember telling us, after talking to the Defendant that it was clear that [L.F.] didn't want to have sex with him that day?" When C.J. responded "no" to this question, it appears that this was the conclusion he had reached based upon his conversations with Thrasher. We conclude that the prosecutor's question is admissible.
 {¶ 57} Thrasher's Third Assignment of Error is overruled.
 V {¶ 58} Thrasher's Fourth Assignment of Error is as follows:
 {¶ 59} "APPELLANT'S CONVICTION MUST BE REVERSED DUE TO THE INEFFECTIVENESS OF COUNSEL."
 {¶ 60} Thrasher contends that defense counsel was ineffective when he failed to object to the prosecutor's improper statements during closing arguments as well as the hearsay statements made by C.J. on direct examination by the State. Thrasher also contends that defense counsel was ineffective when he failed to object to the prosecutor inviting the jury to convict him on an unindicted crime or a duplicitious indictment.
 {¶ 61} We evaluate claims of ineffective assistance of counsel under the two-part test provided in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's errors, the result of the proceeding would have been different." State v. Stevens, Montgomery App. No. 19572,2003-Ohio-6249, at ¶ 33, citing Strickland, supra; State v.Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 62} We find that defense counsel's performance was deficient in failing to object to the prosecutor's improper statements during closing argument, but conclude that the result of the proceeding would not have been different, but for counsel's errors. We note that defense counsel did rebut the prosecutor's statements in closing arguments when he stated the following:
 {¶ 63} "You also are all aware, and you probably made some notes this morning, that in his summary Mr. Hunter went well beyond the testimony, both in his slides up here and also in his comments. It went beyond the testimony of what the people told you in here, and he also went on to tell you testimony about what they told him in his office, okay, and so on. That, of course — he's not a witness, and what he tells you here this morning might be of interest to him, it might be of interest to you, but it's not what you can consider."
 {¶ 64} The trial court also properly instructed the jury that closing arguments are not to be considered evidence, and we must presume that the jury followed the trial court's instructions.
 {¶ 65} Given that we found the statements made by C.J. on direct examination to be admissible, we conclude that defense counsel was not deficient in not objecting to the testimony.
 {¶ 66} Regarding Thrasher's third contention, we conclude that defense counsel was not deficient in failing to object to the indictment. Choosing to not object to the indictment may have been a reasonable tactical choice to avoid Thrasher being indicted on three counts of Rape as opposed to two.
 {¶ 67} We conclude that defense counsel was not ineffective in his representation of Thrasher.
 {¶ 68} Thrasher's Fourth Assignment of Error is overruled.
 VI {¶ 69} Thrasher's Fifth Assignment of Error is as follows:
 {¶ 70} "APPELLANT'S SENTENCE MUST BE VACATED SINCE IT IS BASED ON FACTS NOT PRESENTED TO JURY NOR INVOLVING A PRIOR CONVICTION."
 {¶ 71} Thrasher was sentenced to more than the minimum prison term, based upon the trial court's findings of fact, pursuant to R.C. 2929.14, that the shortest prison term would demean the seriousness of the offense, that it would not adequately protect the public from future crime by Thrasher or by others, that Thrasher has committed the worst form of the offense, and that Thrasher poses a likelihood for recidivism. Thrasher contends that the imposition of more than the minimum prison term could not be conditioned upon a finding of fact without affording him the right to have that finding of fact made by a jury. This assignment of error is sustained upon the authority of State v.Foster, ___ Ohio St.3d ___, 2006-Ohio-856, which, at ¶ 104, mandates reversal and remand for a new sentencing hearing.
 VII {¶ 72} Thrasher's Fifth Assignment of Error having been sustained, and his other assignments of error having been overruled, his sentence is Reversed, and this cause is Remanded for re-sentencing in accordance with State v. Foster, supra.
Wolff and Grady, JJ., concur.