[Cite as *State v. Glenn*, 2011-Ohio-3684.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 94425**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVANTE GLENN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-525626

**BEFORE:**   DeGenaro, J.,* Gallagher, A.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   July 28, 2011

**ATTORNEY FOR APPELLANT**

Regis E. McGann, Esq.
600 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Andrew J. Santoli, Esq.
Assistant County Prosecutor
1200 Ontario Street
Cleveland, Ohio 44113


MARY DEGENARO, J.:*

{¶ 1}   Defendant-appellant, Devante Glenn, appeals his convictions for aggravated robbery and theft.   For the reasons set forth below, we affirm.

{¶ 2}   On July 6, 2009, the Cuyahoga County Grand Jury indicted appellant on six counts: Counts 1 and 4 alleged aggravated robbery in violation of R.C. 2911.01(A)(1); Counts 2 and 5 alleged kidnapping in violation of R.C. 2905.01(A)(2); and Counts 3 and 6 alleged theft in violation of R.C. 2913.02(A)(1).   All counts included one- and three-year firearm specifications.   Appellant pled not guilty to all charges.

{¶ 3}   After appellant waived his right to a jury, the matter proceeded to a bench trial on October 26, 2009.   At trial, the state presented testimony from the following

individuals: Lenore Orloski, James Plezia, Detective Scott Clayton, Sergeant John Bechtel, and Officer William Busse. Their testimony established the following facts.

{¶ 4} Orloski testified that she drove to Plezia's house in Cleveland, Ohio on March 8, 2009, and parked her Jeff Gordon edition 2003 Chevy Monte Carlo in the driveway. She explained that the car has flames along the side and hood, and a license plate that read "24 WINS." Plezia owns a dark blue Chevy Malibu equipped with OnStar, a mechanism used to track vehicles via a GPS system. The two then left in Plezia's Malibu.

{¶ 5} Around 9:30 p.m., Orloski and Plezia returned to Plezia's house. Orloski exited Plezia's Malibu and entered her Monte Carlo and the parties switch the positions of the cars so that the Malibu was the first vehicle in the driveway with Orloski's vehicle directly behind. As Orloski exited the Monte Carlo, she saw four individuals across from her vehicle. One of the individuals, wearing a beige, tan sweatshirt and baggy blue jeans, approached her, pointed a firearm in her direction and demanded her keys and purse. The individual confiscated these items, and drove off in the Monte Carlo with another person, and the other two individuals drove away in Plezia's Malibu. Orloski then phoned 911 and OnStar. Orloski identified appellant as the individual who pointed the firearm at her.

{¶ 6} Plezia testified similarly to Orloski, and specifically that the assailant with the firearm was an African-American male, who wore a tan-brown jacket possibly made

of sweatshirt material.

{¶ 7} Officer Busse testified that he and his partner responded to the call, and learned that the Malibu and Monte Carlo were stolen at gunpoint. The victims described the individual holding the firearm as an African-American male wearing a tan or brown jacket and blue jeans.

{¶ 8} About two hours later, OnStar tracked the Malibu to Noble Road in East Cleveland and informed the police. Sergeant Bechtel testified that he responded to the call, and at Noble Road he saw the Malibu, followed by the Monte Carlo. Sgt. Bechtel explained that the Monte Carlo had the license plate "24 WINS" and a NASCAR sticker. Sgt. Bechtel, along with Officer O'Leary, followed the vehicles. The Malibu then made a right turn while the Monte Carlo turned left onto Terrace Avenue, and the officers continued to follow the Malibu. At the time, Sgt. Bechtel was unaware that the Monte Carlo had also been stolen.

{¶ 9} The Malibu turned onto Nela Avenue and drove behind a house. The driver, later identified as appellant, exited the vehicle and began running from the police. Sgt. Bechtel parked his vehicle and joined Officer O'Leary in the foot pursuit of appellant. Sgt. Bechtel yelled at appellant to stop running, which he ignored, and ran through a wooded area. Eventually, Sgt. Bechtel apprehended appellant near Belvoir Avenue. Orloski's purse was found in the Malibu. And an hour following appellant's arrest, Sgt. Bechtel recovered the Monte Carlo, which had been abandoned.

{¶ 10} Officer Busse further testified that he transported appellant from the East Cleveland police station to the Central Processing Unit. When Officer Busse arrived at the East Cleveland station, appellant was laughing and giggling. But when appellant was being booked and fingerprinted at Cleveland CPU, appellant became upset and cried. Officer Busse testified that while crying, appellant blurted out that the clothes he had on were not the clothes he had on during the robbery, that he had on a tan jacket and blue jeans.

{¶ 11} Det. Clayton testified that a couple days following the incident, he showed Orloski three photo arrays with six photos in each array, for a total of 18 photographs, and that each array included a picture of one of appellant's brothers. At that time, there wasn't a picture of appellant to include in the array, and Det. Clayton considered the brothers as persons of interest. Although both Orloski and Plezia identified one of appellant's brothers as someone who could have been involved, nevertheless, they both stated that none of these photographs depicted the person who brandished the firearm and took Orloski's purse and vehicle. Then about two weeks later, Det. Clayton showed Orloski another array of six photographs in which she affirmatively identified appellant as the individual holding the weapon. Plezia was unable to identify anyone in this array.

{¶ 12} Appellant moved for acquittal pursuant to Crim.R. 29(A), which was granted as to the kidnapping charges only. The trial court found appellant guilty of two counts of aggravated robbery, two counts of theft, and of the firearm specifications

associated with these charges. The trial court sentenced appellant to an aggregate six year prison term and imposed five years of post-release control.

{¶ 13} Appellant now appeals his convictions and presents two assignments of error for our review. His first provides:

{¶ 14} "The trial court, by failing in its affirmative duty to prevent bias and prejudice, in accordance with R.C. 2945.03, denied Mr. Glenn his constitutional right to a fair trial. Pursuant to U.S. Constitution Amendments VI and XIV and Ohio Constitution Article I, Sections 10 and 16."

**Bias Versus Legal Error**

{¶ 15} Appellant argues that the trial court engaged in bias and prejudice by permitting irrelevant and inadmissible evidence at trial. More specifically, appellant complains that Orloski's identification of him in the photo array was impermissibly suggestive. He next contends that the trial court erred in admitting the statements appellant made to Officer Busse at CPU. Appellant conflates a trial court's bias with a trial court's erroneous legal rulings, which are distinct issues.

{¶ 16} "The term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.' *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 318, 132 N.E.2d 191, 195.

{¶ 17} "The statutory right to seek disqualification of a judge is an extraordinary remedy. *In re Disqualification of Hunter* (1988), 36 Ohio St.3d 607, 522 N.E.2d 461. Further, a judge is presumed to follow the law in all respects, *In re Disqualification of Parks* (Aug. 26, 1993), No. 93-AP-060, unreported, and is presumed not to be biased:

{¶ 18} " ' "Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity." ' 48A Corpus Juris Secundum (1981) 731, Judges, Section 108, quoted in *State v. Baker* (1984), 25 Ohio Misc.2d 11, 12, 25 OBR 232, 234, 495 N.E.2d 976, 977-978." *In re Disqualification of Olivito* (1994), 74 Ohio St.3d 1261, 1262-3, 657 N.E.2d 1361.

{¶ 19} Turning next to legal errors, "the law presumes that in a bench trial the court considers only relevant, material, and competent evidence." *State v. Bays*, 87 Ohio St.3d 15, 27, 1999-Ohio-216, 716 N.E.2d 1126. Even if the trial court erroneously admitted testimony into evidence, we must presume that it did not consider it in reaching its verdict. *State v. Teagarden*, 5th Dist. No. 08-CA-39, 2008-Ohio-6986, ¶54.

{¶ 20} Appellant offers no evidence of judicial "bias or prejudice" and instead argues that the trial court considered "improper" evidence. "Dissatisfaction or disagreement with a judge's rulings of law are legal issues subject to appeal. A trial judge's opinions of law, even if erroneous, are not by themselves evidence of bias or

prejudice and thus are not grounds for disqualification.*" In re Disqualification of Murphy*, (1988) 36 Ohio St.3d 605, 606, 522 N.E.2d 459. Therefore, we must presume the trial court did not consider the inadmissible evidence. Nevertheless, even without this presumption, we find no error in the admission of Orloski's identification of appellant from the photo array or appellant's statements to Officer Busse at CPU.

**Victim Identification**

{¶ 21} Appellant argues that Orloski's identification of him as the assailant from a photo array was impermissibly suggestive. He concedes that Orloski identified him in the fourth photo array, but maintains that the three prior photo arrays each contained a photograph of one of his brothers. As such, by the time Orloski viewed the fourth array, she was tainted and the array was impermissibly suggestive.

{¶ 22} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress the identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy* (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819.

{¶ 23} The defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive. If this burden is met, the court must next consider whether the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United*

*States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247. No due process violation will be found where an identification does not arise from an impermissibly suggestive confrontation, but rather, from observations at the time of the crime. *Coleman v. Alabama* (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999, 26 L.Ed.2d 387.

**{¶ 24}** A court must consider, under the totality of the circumstances, the following factors with regard to potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." *Neil v. Biggers* (1972), 409 U.S. 188, 196-198, 93 S.Ct. 375, 34 L.Ed.2d 401. Even if the identification procedure may have contained notable defects, this factor does not, per se, prevent the admissibility of the identification. *State v. Merrill* (1984), 22 Ohio App.3d 119, 121, 489 N.E.2d 1057; *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 377 N.E.2d 1008.

**{¶ 25}** Here, the photo identification of appellant was not impermissibly suggestive. Orloski had ample opportunity to view appellant and provided the police with an accurate description of him prior to the photo array. Additionally, Orloski was shown 24 photographs before positively and affirmatively identifying appellant less than two weeks after the incident. The photo arrays were admitted to show Orloski did not simply identify the first familiar African-American male, and in fact, was shown a

plethora of photographs in the course of the investigation before picking him. Therefore, we find no error in the trial court denying suppression of the photographic identification.

**Defendant's Statement to Police**

{¶ 26} Regarding the admission of appellant's statement to Officer Busse at CPU, trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, 780 N.E.2d 186, ¶75. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256-257, 1996-Ohio-159, 662 N.E.2d 1 (Internal citations and quotations omitted.)

{¶ 27} A suspect who volunteers information and is not asked any questions, is not subject to a custodial interrogation and is not entitled to warnings pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694. *State v. McGuire* (1997), 80 Ohio St.3d 390, 401, 1997-Ohio-335, 686 N.E.2d 1112, citing *State v. Roe* (1989), 41 Ohio St.3d 18, 22, 535 N.E.2d 1351. In other words, "Miranda does not

affect the admissibility of '[v]olunteered statements of any kind.'" Id., citing *Miranda*, supra at 478. Appellant's spontaneous and voluntary statements need not have been suppressed. The trial court did not err in denying suppression of appellant's statements because they were not made in response to any questions from the officers, they were made spontaneously.

{¶ 28} The trial court determine that the unsolicited statements, appellant blurted out were admissible under the hearsay exception of an excited utterance, which is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). "For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event produced a nervous excitement in the declarant, (2) the statement was made while still under the stress of excitement caused by the event, (3) the statement related to the startling event, and (4) the declarant personally observed the startling event. See *State v. Brown* (1996), 112 Ohio App.3d 583, 601, 679 N.E.2d 361." *State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378, at ¶48. The circumstances under which appellant made his statements do not meet this test or the plain language of the rule. Significantly, appellant's statements were not hearsay, but an admission by a party-opponent.

{¶ 29} Evid.R. 801(D)(2) provides that a statement is not hearsay if it "is offered against a party and is (a) the party's own statement[.]" Id. This has been applied to prior

statements made by a defendant to a third person and testified to by that witness during trial. In *State v. Thrasher*, 2d Dist. No. 2004–CA–113, 2006-Ohio-1260, the court held that a witness' statement about what the defendant admitted to that witness was admissible as a statement of a party-opponent because the statement was the defendant's statement and was offered against him by the State. Id. at ¶55. See, also, *State v. Wilson*, 5th Dist. No. 2005CA00102, 2005-Ohio-5959, at ¶33 (Defendant's statement advising the police of his ownership of the vehicle from which cocaine was seized was not hearsay); *State v. Georgeoff*, 9th Dist. No. 3195-M, 2002-Ohio-216 at *2 (Prior statements by a defendant are admissible in a criminal trial without violating his right against self-incrimination if they were voluntarily made and are relevant). Thus, appellant's voluntary statements made during booking to Officer Busse were admissible at trial because it was proffered by the State against appellant as a statement of a party opponent; it was not hearsay. Evid.R. 801(D)(2).

{¶ 30} Having determined that the trial court did not engage in any bias or prejudice, and correctly admitted Orloski's identification of appellant and appellant's statement while at CPU, appellant's first assignment of error is without merit.

{¶ 31} His second assignment of error states:

{¶ 32} "The verdict was against the manifest weight of the evidence."

**Weight of the Evidence**

{¶ 33} In *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d

541, the Ohio Supreme Court illuminated its test for manifest weight of the evidence as follows:

{¶ 34} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*.' (Emphasis added.) Black's [Law Dictionary (6 Ed.1990),] at 1594."

{¶ 35} The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. And in the context of a bench trial, the above discussed presumption regarding the trial court's consideration of only relevant, material, and competent evidence controls. *Bay*, supra.

{¶ 36} Appellant argues that the admission of his statement and the array testimony caused a miscarriage of justice, and that while the trial court was not convinced by the

witness identification alone, the admission of the additional tainted evidence to supplement the identification was error. We find appellant's argument without merit. Even if we disregard the evidence appellant challenges on appeal, his conviction is not against the manifest weight of the evidence.

{¶ 37} The police apprehended appellant fleeing from the stolen Malibu which contained Orloski's purse. Sgt. Bechtel testified that he responded to Noble Road, where OnStar had tracked the Malibu, and saw the Malibu being following by a Monte Carlo with the license plate "24 WINS." Sgt. Bechtel followed the Malibu, and when it stopped and appellant fled the vehicle, Sgt. Bechtel and Officer O'Leary continued the foot chase of appellant and apprehended him, and the officers never lost sight of appellant during the entire pursuit. Thus, we find no miscarriage of justice and appellant's final assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____

*MARY DEGENARO, JUDGE

SEAN C. GALLAGHER, A.J., and
JAMES J. SWEENEY, J., CONCUR

*(Sitting By Assignment: Judge Mary DeGenaro, of the Seventh District Court of
Appeals).